| | |
|---|---|
| DISTRICT COURT, JEFFERSON COUNTY COLORADO<br>100 Jefferson County Parkway<br>Golden, CO 80401<br>(303) 271-6145 | |
| THE PEOPLE OF THE STATE OF COLORADO<br>In the Interest of<br><br>LAUREN ELIANA ANDREWS,<br>CANDACE JOY ANDREWS,<br>ALEX ASA ANDREWS, and<br>TYRESE COLIN ELIAS ANDREWS<br><br>Children, and concerning<br><br>DELORES ANDREWS and<br>WILLIAM ANDREWS<br><br>Respondents. | ▲ COURT USE ONLY ▲<br><br><br><br>Case Number: 04JV1269 |
| Roy Wallis<br>Assistant County Attorney<br>Jefferson County Attorney's Office<br>100 Jefferson County Parkway, #5500<br>Golden, CO 80419-5500<br>Phone: (303) 271-8900<br>Fax: (303) 271-8937<br>Atty. Reg. #10007 | Div.: O  for Div. V          Ctrm.:  2C |

## PETITION FOR TEMPORARY LEGAL CUSTODY

The Jefferson County Division of Children, Youth, and Families, respectfully represents that:

1. The subject children were placed in the temporary protective custody of the Jefferson County Division of Children, Youth, and Families pursuant to a police hold issued on September 10, 2004, and the Petitioner believes it is necessary and in their best interests to remain in out-of-home placement; and

2.  See Exhibit A attached hereto and incorporated herein by reference.

Wherefore, the Petitioner requests that the subject children be placed in the temporary legal custody of the Jefferson County Division of Children, Youth, and Families.

Respectfully submitted this 13TH day of September, 2004.

JEFFERSON COUNTY ATTORNEY'S OFFICE

*David M. Senft, #33686*

X# ROY WALLIS #10007
Assistant County Attorney
100 Jefferson County Parkway
Golden, CO 80419-5500
303-271-89

## VERIFICATION

The undersigned affirms that she is an employee of the petitioner, the Jefferson County Division of Children, Youth, and Families, that she has read the foregoing Petition and the attached Exhibit A and that the contents of the Petition and Exhibit A are true to the best of her knowledge and belief.

Jefferson County Division of Children, Youth, and Families
900 Jefferson County Parkway
Golden, CO 80401

Subscribed and sworn to before me this 13 day of September, 2004.

Tara Czyzewski
Notary Public
State of Colorado
My Commission Expires Nov. 9, 2005

Notary
900 Jefferson County Parkway
Golden, CO 80401

My Commission Expires: 11/9/05

## EXHIBIT A

The subject child, LAUREN ELIANA ANDREWS, was born on September 14, 1990, and is 14 years of age. The subject child, CANDACE JOY ANDREWS, was born on November 28, 1991, and is 12 years of age. The subject child, ALEX ASA ANDREWS, was born on January 19, 1993, and is 11 years of age. The subject child, TYRESE COLIN ELIAS ANDREWS, was born on March 15, 1999, and is 5 years of age. The subject children reside with DELORES ANDREWS, their mother, at the following address: 9892 W 26th Avenue, Apt. A-5, Lakewood, Colorado

**SYNOPSIS:**

1.      On September 10, 2004, the Jefferson County Division of Children, Youth and Families was contacted by Lakewood Police Agent King regarding the welfare of Lauren Andrews (DOB 9/4/90,) Candice Andrews (DOB 11/28/91,) Alex Andrews (DOB 1/19/93,) and Tyrese Andrews (DOB 3/19/99.) The reporting party stated Ms. Delores Andrews admitted to using crack two days ago and at least one time every month. The reporting party stated the house was also dirty, and there was very little food in the residence. The reporting party stated Ms. Andrews has a non-extraditable warrant out of California for the possession of drugs.

2.      On September 10, 2004, Caseworker Armour was assigned this case for immediate investigation. Caseworker Armour arrived at the residence and spoke to Lakewood Agent King and Agent Swainson outside of the Andrews apartment. Agent King stated Ms. Andrews told him she smoked crack two days ago and has a drug habit. Agent King stated Ms. Andrews stated she smokes crack at least one time a month. Agents King and Swainson stated they found an old "crack pipe" in the residence. Agent King stated the house was dirty when they arrived. Agent King stated Ms. Andrews has been cleaning the residence since they arrived at her apartment. Agent King stated Ms. Andrews is not currently working. Agent King stated Ms. Andrews came to Colorado to escape the life she was living in California. Agent King stated Ms. Andrews stated he used crack to "relax." Agent Swainson stated Ms. Andrews has a non-extraditable warrant out of California for possession of drugs. Agent King stated Ms. Andrews stated the children's father, William Andrews, resides in San Jose, California.

3.      On September 10, 2004, Caseworker Armour spoke to Delores Andrews in her residence. Caseworker Armour advised Ms. Andrews of the allegations that she used crack cocaine. Ms Andrews admitted to smoking crack cocaine two days ago at a friend's house. Ms. Andrews stated she got involved with the wrong people and started to smoke crack cocaine about three years ago. Ms. Andrews stated she used to smoke one forth of an ounce of crack cocaine every other day. Ms. Andrews stated she is trying to "tone down her drug use" for her children. Ms. Andrews stated she smokes crack cocaine about one or two times a month with friends. Ms. Andrews stated she goes to downtown Denver to buy her drugs. Ms. Andrews stated she has not

received any substance abuse treatment. Ms. Andrews denies that she uses any other illegal drugs. Ms Andrews stated the children were in school when she smoked crack.

4.    Ms. Andrews stated she is not currently working. Ms. Andrews stated she received a settlement while in California and had already paid the rent through November 2004. Ms. Andrews stated she needs to start looking for a job. Ms. Andrews stated she has a history of employment in accounting. Caseworker Armour asked Ms. Andrews about the allegations made on August 26, 2004, to the Jefferson County Division of Children, Youth and Families in which she allegedly used and dealt drugs and was a prostitute. Ms. Andrews denied being involved in prostitution or dealing drugs. Ms. Andrews did admit she has a drug charge out of California for "possession of crack cocaine." Ms. Andrews denied any other criminal history or contacts with social services.

5.    On September 10, 2004, Caseworker Armour interviewed Lauren face to face at her residence out of the presence of the perpetrator. Caseworker Armour asked Lauren if she knew why someone would want to talk with her. Lauren stated she knows what is happening. Lauren stated her mother told her she used "crack" and was trying to stop. Lauren stated she thinks her mother has been using drugs for the last few years. Lauren stated she has seen her mother use Crack one time when they lived in California. Lauren stated her mother was using drugs "down the street." Lauren stated she does not think her mother uses in the house because she does not want the other kids to know what she is doing. Lauren stated she keeps an eye on her mother and follows her when she leaves the house to make sure her mother is not doing anything to "put the children at harm."

6.    Caseworker Armour observed the house to be dirty but not a safety hazard for the children. Caseworker Armour did not observed the kitchen to have an adequate amount of food to care for four children. Caseworker Armour observed some meat in the freezer, condiments in the refrigerator, and some cereal and chips in the cupboards.

7.    On September 10, 2004, at 12:50 p.m., a police hold was obtained by Lakewood Police Agent Ken King. A Notice of Hearing and an Application for Court Appointed Counsel were presented to Ms. Andrews at her residence. Caseworker Armour left a phone message for Mr. Williams in California and sent him a copy of the Notice of Hearing.

8.    Caseworker Armour removed Candace, Alex and Tyrese from school. Caseworker Armour attempted to interview Tyrese and Alex face to face out of the presence of the perpetrator however they did not want to talk at that time. Caseworker Armour spoke to Lauren and Candace face to face out of the presence of the perpetrator. Lauren and Candace stated their mother told them she was using drugs and knew she needed help to stop. Lauren and Candace stated this might have been for the best, because their mother needs to realize she needs to get help or she might "lose them." Candace and Lauren stated they would be okay in a foster

home if they knew their mother was getting help with her drug use. Candace and Lauren stated they do not want to live with their father because they are afraid of him. Lauren stated she is scared of her father because one time he was upset that she was playing and not cleaning and "kicked me in the head" a few times. Candace stated she witnessed her father "kick Lauren in the head." Candace and Lauren stated their father is almost seventy years old and has "glaucoma and a heart condition." Candace and Lauren stated they do not think their father would be able to take care of four children.

9.    Caseworker Armour observed Tyrese to have a bad case of eczema. Tyrese was complaining about his skin itching. Lauren stated their mother has not been able to get them in to see a doctor.

10.    Caseworker Armour arranged for the children to go to a Jefferson County foster home.

11.    The Jefferson County Division of Children, Youth and Families has one prior Information and Referral on August 26, 2004, for neglect.

12.    An emergency situation exists which requires the immediate temporary removal of the children from the home and it is reasonable not to make efforts to prevent removal of the children from the home due to the emergency situation.

13.    The Jefferson County Division of Children, Youth and Families is requesting the temporary legal custody of Lauren Andrews, Candace Andrews, Alex Andrews, and Tyrese Andrews for the following reasons:
        a.    The mother admitted to smoking crack cocaine two days ago putting her children at risk for abuse and neglect.

| | |
|---|---|
| DISTRICT COURT, JEFFERSON COUNTY COLORADO<br>100 Jefferson County Parkway<br>Golden, CO 80401<br>(303) 271-6145 | |
| THE PEOPLE OF THE STATE OF COLORADO<br>In the Interest of<br><br>LAUREN ELIANA ANDREWS,<br>CANDACE JOY ANDREWS,<br>ALEX ASA ANDREWS, and<br>TYRESE COLIN ELIAS ANDREWS<br><br>Children, and concerning<br><br>DELORES ANDREWS and<br>WILLIAM ANDREWS<br><br>Respondents. | ▲ COURT USE ONLY ▲<br><br><br><br><br>Case Number:    04JV1269 |
| David M. Serafin<br>Assistant County Attorney<br>Jefferson County Attorney's Office<br>100 Jefferson County Parkway, #5500<br>Golden, CO 80419-5500<br>Phone: (303) 271-8900<br>Fax: (303) 271-8937<br>Atty. Reg. #33686 | Div.: V          Ctrm.: 2B |
| **VERIFIED PETITION IN DEPENDENCY OR NEGLECT** | |

Under the Colorado Children's Code, in particular § 19-3-501, et seq. of the Colorado Revised Statutes, the Petition of the People of the State of Colorado by the <u>Jefferson County Division of Children, Youth and Families</u> respectfully represents:

1.    The following children are residing in or physically present in Jefferson County, State of Colorado:

| NAME | SEX | AGE | BIRTH DATE | RESIDENCE |
|---|---|---|---|---|
| Lauren Eliana Andrews | F | 14 yrs. | 9/14/90 | Jeffco Placement |
| Candace Joy Andrews | F | 12 yrs. | 11/28/91 | Jeffco Placement |
| Alex Asa Andrews | M | 11 yrs. | 1/19/93 | Jeffco Placement |
| Tyrese Colin Elias Andrews | M | 5 yrs. | 3/15/99 | Jeffco Placement |

2.      The names and addresses and relationship to the children of the respondents are: Delores Andrews, mother, 9892 W. 26th Ave., Apt. A-5, Lakewood, CO;  and William Andrews, father, 932 Collins Drive, San Jose, CA  95128.

3.      The names and addresses and relationship to the children of the special respondents are:  None.

4.      The children are dependent or neglected.

5.      The statutory grounds for this action are:

    a.      The respondent father has abandoned the children.

    b.      The parents have subjected the children to mistreatment or abuse or have suffered or allowed another to mistreat or abuse the children without taking lawful means to stop such mistreatment or abuse and prevent it from recurring.

    c.      The children lack proper parental care through the actions or omissions of the parents.

    d.      The children's environment is injurious to their welfare.

    e.      The parents fail or refuse to provide the children necessary subsistence, education, medical care, or any other care necessary for the children's health, guidance, or well being.

6.      The facts, based on information and belief, which bring the children within this Court's jurisdiction are as follows:

    a.      On September 10, 2004, the Jefferson County Division of Children, Youth and Families was informed by the Lakewood Police Department that respondent mother, Delores Andrews, admitted to using crack cocaine two days prior and has used crack cocaine at least one time every month.  The reporting party also indicated the house was dirty, and that there was very little food in the residence.  It has also been reported that respondent mother has a non-extraditable warrant out of the State of California for possession of illegal drugs.

    b.      Two officers from the Lakewood Police Department indicated that they had found an old "crack pipe" in the family home.  Respondent mother apparently stated to the officers that she used crack to "relax."  Upon being interviewed the same day, respondent mother confirmed that she used to smoke crack cocaine every other day, but that she has been trying to "tone down her drug use, for her children."  Respondent mother stated that she has not received any substance abuse treatment.

c.      Other allegations regarding respondent mother were made to the Division on August 26, 2004, in which respondent mother allegedly used and dealt drugs and was a prostitute.

d.      Upon being interviewed, subject children Candace and Lauren stated that they did not want to live with their father in the State of California, because they are afraid of him. Lauren stated that she is scared of her father because one time he "kicked me in the head" a few times. Apparently, however, respondent father, William Andrews, is 67 years of age and may not be in a condition to care for the children.

7.      To the best of Petitioner's knowledge, information and belief the subject children involved in this proceeding:

The Petitioner has no information that the Indian Child Welfare Act is applicable. Inquiries will be made at the temporary custody hearing.

8.      Termination of the parent-child legal relationship is a possible remedy available if this petition alleging that the children are dependent or neglected is sustained. A separate hearing must be held before such termination is ordered. Termination of the parent-child legal relationship means that the children who are the subject of this petition would be eligible for adoption.

9.      Under § 19-3-702(1), C.R.S., as amended, if the children are 6 years of age or older at the time this petition is filed and the children are placed out of the home, the court shall hold a permanency planning hearing to determine the further status or placement of the children no later than twelve months after the original out of home placement. If the children are under 6 years of age at the time this petition is filed, the court shall hold a permanency planning hearing no later than three months after a dispositional decree is entered and a treatment plan is adopted.

10.      The review of any decree of placement of a child subsequent to the three-month review required by § 19-1-115(4)(a) of the Colorado Revised Statutes, as amended, may be conducted as an administrative review by the Department of Social Services, as appropriate. If you are a party to the action you have a right to object to an administrative review, and if you object, the review shall be conducted by the Court.

WHEREFORE, Petitioner requests the following:

(1)      Concerning the parents of the named children, that the court set a date for initial hearing on this petition to advise such individuals of their rights concerning this petition and to make such provision for the children and to enter such orders as are appropriate and provided by law; and

(2)      Concerning named special respondents, that the Court advise such individuals of their rights concerning this petition and join them as parties in this action for purposes of

protective orders, dispositional (treatment plan) orders or other orders provided by law relating to them.

   Respectfully submitted on September 14, 2004.

        JEFFERSON COUNTY ATTORNEY'S OFFICE

        David M. Serafin #33686
        Assistant County Attorney


## VERIFICATION

   I am an employee of the Jefferson County Division of Children, Youth and Families, the Petitioner, have read the foregoing petition and, to the best of my information and belief, believe that the contents of the petition are true.

        Jefferson County Division of Children, Youth
        and Families
        900 Jefferson County Parkway
        Golden, CO 80401   303-271-1388

   Subscribed and affirmed, or sworn to before me in the county of Jefferson, state of Colorado, on September 14, 2004.

        Notary Public
        900 Jefferson County Parkway
        Golden, CO 80401

My commission expires:

My Commission Expires 5/28/2006

4

COPY

| | |
|---|---|
| DISTRICT COURT, JEFFERSON COUNTY COLORADO<br>100 Jefferson County Parkway<br>Golden, CO  80401        (303) 271-6145 | RECEIVED<br>District Court<br>Jefferson County<br><br>2006 MAR 23  PM 3: 12<br>MAR 2 3 2006<br>FILED<br>COMBINED COURT,<br>JEFFERSON COUNTY, CO. |
| THE PEOPLE OF THE STATE OF COLORADO<br>In the Interest of<br><br>LAUREN ELIANA ANDREWS,<br>CANDACE JOY ANDREWS,<br>ALEX ASA ANDREWS, and<br>TYRESE COLIN ELIAS ANDREWS,<br>Children, and concerning<br><br>DELORES ANDREWS and<br>WILLIAM ANDREWS,<br>Respondents. | Division 10<br>Entered<br>Filed ▲ COURT USE ONLY ▲<br><br>RECEIVED<br><br>MAR 2 7 2006<br><br>JEFFERSON COUNTY<br>ATTORNEYS OFFICE |
| Frank J. Hutfless, Atty. Reg. #16718<br>Jefferson County Attorney<br>By: Lawrence R. Bowling, Atty. Reg. #23114<br>Assistant County Attorney<br>100 Jefferson County Parkway, #5500<br>Golden, CO 80419-5500<br>Phone:  (303) 271-8900      Fax:  (303) 271-8937 | Case Number:   04JV1269 - 456<br><br><br>Div.:   10        Ctrm.:   4C |

## MOTION TO TERMINATE PARENT-CHILD LEGAL RELATIONSHIPS

The Petitioner moves this Court for an order terminating the parent-child legal relationships which exist between the subject children, Lauren Andrews, Candace Andrews, Alex Andrews and Tyrese Andrews, and Respondent father William Andrews and respondent mother Dolores Andrew.  Petitioner states the following in support of this motion:

1.    A Petition in Dependency or Neglect was filed on or about September 14, 2004.

2.    The mother of the subject children is respondent Dolores Andrews. The father of the subject children is William Andrews.

3.    Respondent Dolores Andrews appeared at the October 12, 2004 hearing in this matter, with her counsel of record, Graham Peper, and the children were adjudicated dependent children with respect to Dolores Andrews on that date, based upon her admission.

4.    Respondent William Andrews, who resides in California, traveled to Colorado and  personally appeared at the January 18, 2005 hearing in this matter. The children were adjudicated dependent children with respect to William Andrews on that date, based upon his admission.

5.    A treatment plan, which was found by the court to be appropriate and reasonable, and capable of success if complied with by the respondent Dolores Andrews was approved and adopted as an order of the court for respondent Dolores Andrews on November 9, 2004.

6.    A treatment plan, which was found by the court to be appropriate and reasonable, and capable of success if complied with by the respondent William Andrews was approved and adopted as an order of the court for respondent William Andrews on February 15, 2005. Respondent William Andrews participated in the disposition/treatment plan hearing by telephone.

7.    Respondent Dolores Andrews has not reasonably complied with the court-ordered treatment plan and/or the treatment plan has not been successful. Respondent Dolores Andrews' failures to comply with her treatment plan include, but are not limited to the following: failure to attend numerous Court hearings; failure to participate in and/or complete substance abuse treatment; failure to participate in and/or complete parenting classes; failure to participate in and/or complete family therapy with her children; failure to obtain, maintain and provide documentation of employment; failure to develop and maintain a cooperative relationship with all involved professionals, in order to make decisions for the benefit of the family. Respondent Dolores Andrews' parental rights to a child who has a different father were terminated in another action, 05 JV 602 on December 12, 2005, as a result of her failure to comply with her treatment plan in that case. The treatment plans for Dolores Andrews were the same in that action and in this action.

8.    Respondent William Andrews' failures to reasonably comply with his court-ordered treatment plan include refusing and/or failing to cooperate with the State of California in their updating of the Interstate Compact for Placement of Children home study. See Affidavit of  caseworker Jean Broadnax, attached hereto as Exhibit A.

9.    William Andrews' failures to cooperate with California in that regard include refusing and/or failing to complete a requested mental health/psychological evaluation, failing to provide requested information, including refusing to provide names, ages, and occupations of the seven children from his first marriage and failing to provide the dates of any of his three marriages. The status of the California home study process is more fully described in the letters dated September 22, 2005 and November 7, 2005, copies of which are attached to the affidavit of caseworker Jean Broadnax, as Exhibits 1 and 2 to that affidavit, respectively.

2

10.  Respondent William Andrews has failed to take an informed supervision class and has not engaged in and/or been successful in treatment that would allow him to demonstrate an understanding of the developmental needs of each child. Respondent William Andrews also has not engaged in and/or been successful in individualized parenting instruction to learn and practice skills in dealing with teenagers.

11.  The State of California has not approved William Andrews at this time, for placement of the children after California's original approval expired in September 2005. It does not appear as though California will approve William Andrews for placement of the children for several reasons, including his failure to participate in the mental health/psychological evaluation and his other failures to cooperate with California referenced above. This Court is prohibited, therefore, from placing the children with William Andrews in California by C.R.S. §24-60-1802, Article (III)(d). A copy of the referenced statute is attached hereto for the convenience of the Court and the parties, as Exhibit B.

12.  The conduct and/or condition of the Respondents, Dolores Andrews and William Andrews, which causes them to be unfit parents is unlikely to change within a reasonable time and renders them unable and/or unwilling to give the child reasonable parental care.

13.  To the best of Petitioner's knowledge, information and belief the subject children involved in this proceeding do not meet the definition of "Indian child" as no information has been received from the respondent parents that the children have any native American heritage.

14.  There are no reasonable alternatives and/or less restrictive alternatives to the termination of the parent-child legal relationships which would meet the physical, emotional and mental health needs of the subject children.  To the best of Petitioner's knowledge, information and belief, no appropriate relative capable of meeting the children's physical, emotional and mental health needs has filed a timely request for placement of the children.

15.  Any request for placement, guardianship and/or legal custody filed by a grandparent, aunt, uncle, adult brother or sister, concerning a child who is the subject of a dependency or neglect proceeding, must be filed within twenty (20) days of the filing of the motion to terminate the parent-child legal relationship and prior to the hearing on that motion, in order to be considered by the court.

16.  The Petitioner believes it is in the best interests of the subject child for the parent-child legal relationships existing between the subject child and his parents to be terminated.

WHEREFORE, the Petitioner requests that the parent-child legal relationships existing between the subject children and their parents, Dolores Andrews and William Andrews, be terminated and that legal custody and guardianship of the persons of the

subject children be granted to the Jefferson County Division of Children, Youth and Families with the authority to place the children and consent to their adoption.

Respectfully submitted ___March 23___, 2006.

JEFFERSON COUNTY ATTORNEY
Frank J. Hutfless, #16718

By: _Lawrence R. Bowling_

Lawrence R. Bowling, #23114
Assistant County Attorney


## CERTIFICATE OF MAILING

I hereby certify that on _March 23_, 2006, a copy of the foregoing Motion to Terminate Parent-Child Legal Relationships was placed in the United States' mail, postage prepaid, addressed to: William Andrews, 932 College, San Jose, CA 95128 and was placed in the interoffice mail at the Jefferson County Courts and Administration Facility addressed to: Graham B. Peper, Esq.; Laurie Cohen-Ringler, Esq.; and Jean Broadnax, Jefferson County Division of Children, Youth and Families.

_Dawna Justice_

4

<table>
<tr><td>

DISTRICT COURT, JEFFERSON COUNTY
COLORADO
100 Jefferson County Parkway
Golden, CO 80401          (303) 271-6145

</td><td rowspan="3"></td></tr>
</table>

| | |
|---|---|
| DISTRICT COURT, JEFFERSON COUNTY COLORADO<br>100 Jefferson County Parkway<br>Golden, CO 80401          (303) 271-6145 | |
| THE PEOPLE OF THE STATE OF COLORADO<br>In the Interest of<br><br>LAUREN ELIANA ANDREWS,<br>CANDACE JOY ANDREWS,<br>ALEX ASA ANDREWS, and<br>TYRESE COLIN ELIAS ANDREWS,<br>Children, and concerning<br><br>DELORES ANDREWS and<br>WILLIAM ANDREWS,<br>Respondents. | ▲ COURT USE ONLY ▲ |
| Frank J. Hutfless, Atty. Reg. #16718<br>Jefferson County Attorney<br>By: Lawrence R. Bowling, Atty. Reg. #23114<br>Assistant County Attorney<br>100 Jefferson County Parkway, #5500<br>Golden, CO 80419-5500<br>Phone: (303) 271-8900      Fax:  (303) 271-8937 | Case Number:   04JV1269<br><br><br>Div.:   10          Ctrm.:  4C |
| **AFFIDAVIT** | |

 

I, JEAN BROADNAX, caseworker, Jefferson County Division of Children, Youth and Families, being of lawful age and being first duly sworn upon oath, depose and state:

1. I am the caseworker assigned to this dependency or neglect action.

2. I have reviewed the motion to terminate the parent-child legal relationships and state that the allegations contained therein regarding the status of California's consideration of respondent father William Andrews under the Interstate Compact for the Placement of Children are true and correct, to the best of my knowledge. The respondent father resides in California and has since before this action opened. An Interstate Compact for Placement of Children home study was initiated on William Andrews to determine whether or not California would approve placement of the children with William Andrews, should the Court hearing this action wish to choose that as an option. It became necessary to request that California do an updating of the home study, after the original approval of William Andrews expired in September 2005.

EXHIBIT
A
04 JV 1269

1

3.   William Andrews is not currently approved for placement of the children by the State of California for several reasons, including his failure to complete a mental health/psychological evaluation that was arranged to be done by a mental health professional approved by California. The status of California's home study is more fully described in letters dated October 5, 2005 and November 7, 2005 from the County of Santa Clara, California Social Services agency, that are attached hereto as Exhibits 1 and 2.

*Jean Broadnax, MA, MSW*

Jean Broadnax, Caseworker
Jefferson County Div. Children, Youth &
Families
900 Jefferson County Parkway
Golden, CO 80401                303-271-1388

The above Affidavit was subscribed and sworn to before me on ~~February~~ _____,
~~2006.~~   *March 20, 2006*

*(Notary seal: JOHN PIERRE DUCETT, NOTARY PUBLIC, STATE OF COLORADO)*
*My Commission Expires 12/17/2008*

Notary
Address

My commission expires: *12 - 17 - 2008*

2

**County of Santa Clara**
Social Services Agency



373 West Julian Street
San Jose, California 95110-2335

9/22/05

Tim Young, ICPC Coordinator
Jefferson County
900 Jefferson County Parkway
Golden, CO 80401

RE: ICPC - William Andrews

Dear Mr. Young

This is being written in regards to the Interstate home assessment of Mr. William Andrews. Our initial assessment was completed in March of this year with the 100A form being signed by our coordinator, *Meheret Sellasie*, on 3/18/05. Since the children were not placed within the sixth months from the time of approval, this ICPC case is now closed.

If your state continues to feel that the best placement for these children is with the father, then a new ICPC request will need to be made to our office. We will however work to expedite any further assessments as quickly as possible.

In regards to the request from the local for more information regarding Mr. Andrews, we have recently sent to them copies of the numerous investigations involving the family. Although we are closing the case, we will continue to review the old case records and advise the local of any significant findings, which may aide in their decision making process.

Please feel free to contact us for any future assistance.

Sincerely,

Larry D. Merkur, LMSW
Social Work Supervisor



PETITIONER'S EXHIBIT

# County of Santa Clara
Social Services Agency



~~~ West Julian Street
San Jose, California 95110-2335

11/7/05

Holly Haman Marcum / Jean Broadnax
Jefferson County Division of Children, Youth & Families

RE: ICPC William Andrews

Dear Ms. Haman Marcum and Ms. Broadnax:

This letter is provided as an update on our progress with Mr. Andrews' homestudy. Moon-Ja Kim and I have now visited with Mr. Andrews twice (10/26 & 11/2) in an effort to conduct a comprehensive homestudy and assessment. Moon-Ja will meet with his daughter, Mia, alone at the end of one school day this week. While we had hoped to complete the assessment prior to your next court date, based on the difficulty we are having obtaining clear information from Mr. Andrews, it now seems to us to be more appropriate to await the outcome of a mental health evaluation before we continue. Unfortunately, during our visit with Mr. Andrews on 11/2/05, he adamantly stated his opposition to such an evaluation. Mr. Andrews stated that he would not cooperate with such a request, as he doesn't believe in it. He added that he would agree to an evaluation under the following conditions: that president Bush, Larry King and the therapists who are seeing his children also be evaluated.

As you are well aware, it is quite a challenge communicating with Mr. Andrews, and obtaining understandable information is very difficult. Below you find numerous examples of the difficulty we are having gathering coherent information. Mr. Andrews' responses are often <u>unusual</u>, difficult to follow, without clear detail and at times sound grandiose.

- During our contact with him on 11/2/05, he <u>refused</u> to provide us with the names, ages, occupations, etc. of the 7 children from his first marriage. He stated that it was unnecessary, and he was concerned that the information could be used inappropriately. He can provide no clarity as to the nature of his relationship with those children; other than they call him when they need "counseling." His response regarding what relationship exists among the 12 children is also unclear. He readily admits that he does not call either his children or his own siblings – they call him.

- Mr. Andrews reports a third marriage, occurring at some point in between the marriage to the mother of his first seven children, and Dolores. He states that it lasted for a period of three days, and it was annulled. He is unable to provide us with the dates of any of the three marriages, divorces or annulments. He continually states that dates are not important to him. He has no one in mind to marry for the future, but admits to having told Colorado staff that he will probably marry again.

- We did ask Mr. Andrews if he has children from any other relationships, and he responded "not that he's aware of."



PETITIONER'S
EXHIBIT
2

- While Mr. Andrews states he helped raise other children, he could not tell us the names of any of the children he has fostered (informally) or when he did so. He states that he is bad with names. Asked about grandchildren and he states that he stopped counting after fourteen.

- We have asked Mr. Andrews to provide us with verification of his social security benefits and pension, and he has agreed to do that, though he could not locate the paperwork while we were in his home. He stated that he will **not** provide us with any financial paperwork regarding how the church supports him, or exactly what the financial relationship is, and he reports that he does not file taxes, he claims, based on his relationship to the church and his low income.

- Regarding Mr. Andrews' relationship to work with TV or Radio, he cannot name any of the stations, nor specifically when this occurred, other than some of this happened while he operated several schools in another state in the past. Mr. Andrews does state that the church he currently runs did have its services broadcast via tape on a local TV station. Though he does not know what station, he said he would provide us with a tape. Mr. Andrews is also unable to tell us the names of the schools he claims to have started.

- While it was difficult to extract what his education is, he did tell us that he attended Cornus Hill Bible College in Akron Ohio, but cannot tell us when. Although I pointed out how such dates are usually important markers for people, he said he's not like other people and he does not "keep" dates. He often repeats that dates are not important to him. Mr. Andrews makes reference to other classes, and education, but cannot tell us where, when or provide any documentation to prove attendance or completion.

- Examples of the grandiosity of his presentations include statements that he has had international undercover agents in his church; that his congregation is made up mostly of other pastors and ministers, who come to learn from him. He also says that his day is filled as a servant, solving other people's problems. At our last home visit, he referenced communication from Senator Feinstein, advising him to call Governor Arnold Schwarzenegger. Mr. Andrews could not produce said letter from Ms. Feinstein.

Your letter of October 19th indicates that Mr. Andrews was court ordered to participate in an "Informed Supervision" class specific to children with sexually inappropriate behaviors, however, based on his stated negative experience with a previous parenting class, we are concerned about his ability to benefit from other parenting classes, I'd like to recommend that as part of the psychological evaluation, should he cooperate, that the evaluator be asked to recommend the type of parenting classes most appropriate for Mr. Andrews, as well an assessment as to his ability to benefit from such classes.

Please call me after you've had an opportunity to review this letter, so we can discuss how to best proceed together with this assessment. Thank You

Sincerely,

Larry D. Merkur, LMSW
408-975-5114

### Article I

The states of New Mexico and Colorado agree jointly to acquire, own and make provision for the operation of the Cumbres and Toltec scenic railroad.

### Article II

The states of New Mexico and Colorado hereby ratify and affirm the agreement of July 1, 1970, entered between the railroad authorities of the states.

### Article III

The states of New Mexico and Colorado agree to make such amendments to the July 1, 1970, agreement and such other contracts, leases, franchises, concessions or other agreements as may hereafter appear to both states to be necessary and proper for the control, operation or disposition of the said railroad.

### Article IV

The states of New Mexico and Colorado agree to the consideration of the enactment of such laws or constitutional amendments exempting the said railroad or its operations from various laws of both states as both states shall hereafter mutually find necessary and proper.

### Article V

Nothing contained herein shall be construed so as to limit, abridge or affect the jurisdiction or authority, if any, of the interstate commerce commission over the said railroad, or the applicability, if any, of the tax laws of the United States to the said railroad or its operations.

**Source: L. 73: p. 900, § 1. C.R.S. 1963: § 74-19-1.**

Editor's note: Pursuant to section 205 of the federal "ICC Termination Act of 1995", Pub. L. 104-88, the reference in article V of this compact to the "interstate commerce commission" is deemed to refer to the surface transportation board.

### ANNOTATION

Am. Jur.2d. See 72 Am. Jur.2d, States, Territories, and Dependencies, §§ 10-17.    C.J.S. See 81A C.J.S., States, §§ 67-71.

**24-60-1702. When compact effective.** The compact approved by this part 17 shall not become effective unless and until the same shall have been consented to by the congress of the United States.

**Source: L. 73: p. 901, § 1. C.R.S. 1963: § 74-19-2.**

## PART 18

### INTERSTATE COMPACT ON PLACEMENT OF CHILDREN

**24-60-1801. Short title.** This part 18 shall be known and may be cited as the "Interstate Compact on Placement of Children".

**Source: L. 75: Entire part added, p. 844, § 1, effective July 14.**

EXHIBIT

B

tabbies'

Am. Jur.2d. See 72 Am. Jur.2d, States, Territories, and Dependencies, §§ 10-17.

C.J.S. See 81A C.J.S., States, §§ 67-71.

Law reviews. For article, "Adoption Procedures of Minor Children in Colorado", see 12 Colo. Law. 1057 (1983). For article, "Colorado

Residential Child Care Facilities: A Plea for Adequate Funding", see 13 Colo. Law. 2241 (1984).

Applied in Dept. of Soc. Servs. v. Arapahoe County Dept. of Soc. Servs., 642 P.2d 16 (Colo. App. 1981).

**24-60-1802. Execution of compact.** The governor is hereby authorized to execute a compact on behalf of this state with any other state or states legally joining therein in the form substantially as follows:

## ARTICLE I

### Purpose and Policy

It is the purpose and policy of the party states to cooperate with each other in the interstate placement of children to the end that:

(a) Each child requiring placement shall receive the maximum opportunity to be placed in a suitable environment and with persons or institutions having appropriate qualifications and facilities to provide a necessary and desirable degree and type of care;

(b) The appropriate authorities in a state where a child is to be placed may have full opportunity to ascertain the circumstances of the proposed placement, thereby promoting full compliance with applicable requirements for the protection of the child;

(c) The proper authorities of the state from which the placement is made may obtain the most complete information on the basis of which to evaluate a projected placement before it is made;

(d) Appropriate jurisdictional arrangements for the care of children will be promoted.

## ARTICLE II

### Definitions

As used in this compact:

(a) "Child" means a person who, by reason of minority, is legally subject to parental, guardianship or similar control;

(b) "Sending agency" means a party state, officer or employee thereof; a subdivision of a party state, or officer or employee thereof; a court of a party state; a person, corporation, association, charitable agency, or other entity which sends, brings, or causes to be sent or brought any child to another party state;

(c) "Receiving state" means the state to which a child is sent, brought, or caused to be sent or brought, whether by public authorities or private persons or agencies, and whether for placement with state or local public authorities or for placement with private agencies or persons;

(d) "Placement" means the arrangement for the care of a child in a family free or boarding home or in a child-caring agency or institution but does not include any institution caring for the mentally ill, mentally defective or epileptic or any institution primarily educational in character, and any hospital or other medical facility.

## ARTICLE III

### Conditions for Placement

(a) No sending agency shall send, bring, or cause to be sent or brought into any other party state any child for placement in foster care or as a preliminary to a possible adoption unless the sending agency shall comply with each and every requirement set forth in this

article and with the applicable laws of the receiving state governing the placement of the children therein.

(b)   Prior to sending, bringing, or causing any child to be sent or brought into a receiving state for placement in foster care or as a preliminary to a possible adoption, the sending agency shall furnish the appropriate public authorities in the receiving state written notice of the intention to send, bring, or place the child in the receiving state. The notice shall contain:

(1)   The name, date, and place of birth of the child;

(2)   The identity and address or addresses of the parents or legal guardian;

(3)   The name and address of the person, agency or institution to or with which the sending agency proposes to send, bring, or place the child;

(4)   A full statement of the reasons for such proposed action and evidence of the authority pursuant to which the placement is proposed to be made.

(c)   Any public officer or agency in a receiving state which is in receipt of a notice pursuant to paragraph (b) of this article may request of the sending agency, or any other appropriate officer or agency of or in the sending agency's state, and shall be entitled to receive therefrom, such supporting or additional information as it may deem necessary under the circumstances to carry out the purpose and policy of this compact.

(d)   The child shall not be sent, brought, or caused to be sent or brought into the receiving state until the appropriate public authorities in the receiving state shall notify the sending agency, in writing, to the effect that the proposed placement does not appear to be contrary to the interests of the child.

## ARTICLE IV

### Penalty for Illegal Placement

(a)   The sending, bringing, or causing to be sent or brought into any receiving state of a child in violation of the terms of this compact shall constitute a violation of the laws respecting the placement of children of both the state in which the sending agency is located or from which it sends or brings the child and of the receiving state. Such violation may be punished or subjected to penalty in either jurisdiction in accordance with its laws.

(b)   In addition to liability for any such punishment or penalty, any such violation shall constitute full and sufficient grounds for the suspension or revocation of any license, permit, or other legal authorization held by the sending agency which empowers or allows it to place, or care for children.

## ARTICLE V

### Retention of Jurisdiction

(a)   The sending agency shall retain jurisdiction over the child sufficient to determine all matters in relation to the custody, supervision, care, treatment and disposition of the child which it would have had if the child had remained in the sending agency's state, until the child is adopted, reaches majority, becomes self-supporting or is discharged with the concurrence of the appropriate authority in the receiving state. Such jurisdiction shall also include the power to effect or cause the return of the child or its transfer to another location and custody pursuant to law. The sending agency shall continue to have financial responsibility for support and maintenance of the child during the period of the placement. Nothing contained herein shall defeat a claim of jurisdiction by a receiving state sufficient to deal with an act of delinquency or crime committed therein.

(b)   When the sending agency is a public agency, it may enter into an agreement with an authorized public or private agency in the receiving state providing for the performance of one or more services in respect of such case by the latter as agent for the sending agency.

(c)   Nothing in this compact shall be construed to prevent a private charitable agency authorized to place children in the receiving state from performing services or acting as agent in that state for a private charitable agency of the sending state, nor to prevent the

agency in the receiving state from discharging financial responsibility for the support and maintenance of a child who has been placed on behalf of the sending agency without relieving the responsibility set forth in paragraph (a) hereof.

## ARTICLE VI

### Institutional Care of Delinquent Children

A child adjudicated delinquent may be placed in an institution in another party jurisdiction pursuant to this compact but no such placement shall be made unless the child is given a court hearing on notice to the parent or guardian with opportunity to be heard, prior to his being sent to such other party jurisdiction for institutional care and the court finds that:

(1) Equivalent facilities for the child are not available in the sending agency's jurisdiction; and

(2) Institutional care in the other jurisdiction is in the best interest of the child and will not produce undue hardship.

## ARTICLE VII

### Compact Administrator

The executive head of each jurisdiction party to this compact shall designate an officer who shall be general coordinator of activities under this compact in his jurisdiction and who, acting jointly with like officers of other party jurisdictions, shall have power to promulgate rules and regulations to carry out more effectively the terms and provisions of this compact.

## ARTICLE VIII

### Limitations

This compact shall not apply to:

(a) The sending or bringing of a child into a receiving state by his parent, stepparent, grandparent, adult brother or sister, adult uncle or aunt, or his guardian and leaving the child with any such relative or nonagency guardian in the receiving state;

(b) Any placement, sending, or bringing of a child into a receiving state pursuant to any other interstate compact to which both the state from which the child is sent or brought and the receiving state are party, or to any other agreement between said states which has the force of law.

## ARTICLE IX

### Enactment and Withdrawal

This compact shall be open to joinder by any state, territory, or possession of the United States, the District of Columbia, the Commonwealth of Puerto Rico, and, with the consent of Congress, the Government of Canada or any province thereof. It shall become effective with respect to any such jurisdiction when such jurisdiction has enacted the same into law. Withdrawal from this compact shall be by the enactment of a statute repealing the same, but shall not take effect until two years after the effective date of such statute and until written notice of the withdrawal has been given by the withdrawing state to the governor of each other party jurisdiction. Withdrawal of a party state shall not affect the rights, duties and obligations under this compact of any sending agency therein with respect to a placement made prior to the effective date of withdrawal.

Interstate Compacts and Agreements

## ARTICLE X

## Construction and Severability

(a)  The provisions of this compact shall be liberally construed to effectuate the purposes thereof;

(b)  The provisions of this compact shall be severable and if any phrase, clause, sentence or provision of this compact is declared to be contrary to the constitution of any party state or of the United States or the applicability thereof to any government, agency, person or circumstance is held invalid, the validity of the remainder of this compact and the applicability thereof to any government, agency, person or circumstance shall not be affected thereby;

(c)  If this compact shall be held contrary to the constitution of any state party thereto, the compact shall remain in full force and effect as to the remaining states and in full force and effect as to the state affected as to all severable matters.

**Source: L. 75:** Entire part added, p. 844, § 1, effective July 14.

## ANNOTATION

**Retention of jurisdiction.** Under article V, the sending agency retains jurisdiction until the child is adopted. Denver Dept. of Soc. Servs. v. District Court, 742 P.2d 339 (Colo. 1987).

The mere filing of an adoption petition is not sufficient to divest the sending agency of jurisdiction. Denver Dept. of Soc. Servs. v. District Court, 742 P.2d 339 (Colo. 1987).

Where no final adoption decree has been entered, an agency can withdraw its consent to adoption and since consent to adoption is necessary in all adoptions, once consent is withdrawn, the receiving court is divested of its jurisdiction. Denver Dept. of Soc. Servs. v. Dis-

trict Court, 742 P.2d 339 (Colo. 1987).

Because "sending agency" was intermediary who was designated to assist with the placement of the child and who was not requesting, effecting, or causing the child to be returned to the child's state of origin and, in fact, had specifically stated that it was not in the best interests of the child to return to the child's state of origin, the ICPC did not demand the return of the child to the state of origin. People ex rel. A.J.C., 88 P.3d 599 (Colo.), cert. denied, __ U.S. __, 125 S. Ct. 495, 160 L. Ed.2d 371 (2004).

**24-60-1803.  Additional provisions and definitions.** (1)  Financial responsibility for any child placed pursuant to the provisions of the compact shall be determined in accordance with the provisions of article V thereof in the first instance. However, in the event of partial or complete default of performance thereunder, the provisions of any other applicable laws may be invoked.

(2)  As used in article III of the compact, "appropriate public authorities" means the department of human services, and said department shall receive and act with reference to notices required by said article III.

(3)  As used in article V (a) of the compact, "appropriate authority in the receiving state" means the department of human services.

(4)  The officers and agencies of this state and its subdivisions having authority to place children are hereby empowered to enter into agreements with appropriate officers or agencies of or in other party states pursuant to article V (b) of the compact. Any such agreement which contains a financial commitment or imposes a financial obligation on this state or subdivision, or any agency thereof, shall not be binding unless it has the approval in writing of the controller in the case of the state and of the chief local fiscal officer in the case of a subdivision of the state.

(5)  Any court having jurisdiction to place delinquent children may place such a child in an institution in another state pursuant to article VI of the compact and shall retain jurisdiction as provided in article V thereof.

(6)  As used in article VII of the compact, "executive head" means the governor. The governor is hereby authorized to appoint a compact administrator in accordance with the terms of said article VII.

(7) Notwithstanding the provisions of article 71 of the compact, notice of the proceeding set forth therein shall also be given to the legal custodian of the child and to any other person by law entitled to such notice.

(8) Nothing in the compact shall be construed to terminate the jurisdiction of the courts and agencies of Colorado over children at an earlier age than is otherwise provided by the applicable laws of this state. Except where an applicable statute fixes another age for the termination of minority, such age, for purposes of application of the compact, shall be twenty-one years.

**Source: L. 75:** Entire part added, p. 848, § 1, effective July 14. **L. 94:** (2) and (3) amended, p. 2698, § 245, effective July 1.

## PART 19

## RATIFICATION OF THE CUMBRES AND TOLTEC
## SCENIC RAILROAD COMPACT

**24-60-1901. Ratification of compact.** The general assembly hereby ratifies the compact designated as the "Cumbres and Toltec Scenic Railroad Compact" signed at the city and county of Denver, state of Colorado, on the 26th day of December, A.D. 1974, by John D. Vanderhoof, as governor of the state of Colorado, under authority of and in conformity with the provisions of an act of the general assembly of the state of Colorado, approved May 4, 1973, entitled "An Act Providing for the Adoption of the Cumbres and Toltec Scenic Railroad Compact.", the same being chapter 254 of the Session Laws of Colorado 1973, and signed at Santa Fe, state of New Mexico, on the 11th day of December, A.D. 1974, by Bruce King, as governor of the state of New Mexico, under legislative authority. The consent of congress was given by Public Law 93-467, approved October 24, A.D. 1974, by the senate and house of representatives of the United States of America. Said compact is as follows:

### CUMBRES AND TOLTEC SCENIC RAILROAD COMPACT

The state of New Mexico and the state of Colorado, desiring to provide for the joint acquisition, ownership and control of an interstate narrow gauge scenic railroad, known as the Cumbres and Toltec scenic railroad, within Rio Arriba county in New Mexico and Archuleta and Conejos counties in Colorado, to promote the public welfare by encouraging and facilitating recreation and by preserving, as a living museum for future generations, a mode of transportation that helped in the development and promotion of the territories and states, and to remove all causes of present and future controversy between them with respect thereto, and being moved by considerations of interstate comity, have agreed upon the following articles:

### Article I

The states of New Mexico and Colorado agree jointly to acquire, own and make provision for the operation of the Cumbres and Toltec scenic railroad.

### Article II

The states of New Mexico and Colorado hereby ratify and affirm the agreement of July 1, 1970, entered between the railroad authorities of the states.

### Article III

The states of New Mexico and Colorado agree to make such amendments to the July 1, 1970, agreement and such other contracts, leases, franchises, concessions or other agree-

| DISTRICT COURT, JEFFERSON COUNTY, COLORADO<br><br>Court Address: 100 Jefferson County Parkway<br>Golden, CO 80401 | |
|---|---|
| **Child(ren): LAUREN ANDREWS, CANDACE ANDREWS, ALEX ANDREWS AND TYRESE ANDREWS**<br>**Respondent(s): DOLORES ANDREWS, WILLIAM ANDREWS** | ▲ COURT USE ONLY ▲<br><br>Case Number: 04 JV 1269<br><br>Div.: 10        Ctrm.: |
| Attorney or Party Without Attorney:<br>Name: TERRY ROSS, Attorney for Respondent<br>Address:3773 Cherry Creek Drive N #575<br>Denver, CO 80209<br>Phone Number: 303-331-3413<br>Fax Number: 303-393-1759<br>E-Mail: tross@ricochet.com<br>Atty Reg. #: 16588 | |

## MOTION TO DISQUALIFY THE JEFFERSON COUNTY DEPARTMENT OF CHILDREN, YOUTH AND FAMILIES

The Respondent, William Andrews, makes the following request disqualify the Jefferson County Department of Children, Youth and Family (JCDCYF) and appoint another county to proceed with this matter. As grounds therefore states as follows:

1. The Respondent, William Andrews, is currently involved in civil litigation filed against the Department as a result of this case and JCDCYF should have moved to withdraw and have the Court appoint the department of social services in another county to proceed in this action.

2. There is a conflict of loyalties prevents JCDCYF from remaining fair and objective in this case. *People in the Interest of T.D.*, 05 CA 731 (Colo. App. 3-9-2006). When a conflict such as this exists, it casts doubt on the "fairness and impartiality of the legal system in the public eye." *In the Interest of J.A.M.*, 907 P.2d 725, 726 (Colo. App. 1995)

3. As stated in *T.D*, "The appearance of fairness is just as important as the reality of fairness." The Court must determine whether the department made reasonable efforts to reunite the family in this matter. Father has made allegations that the children are mistreated in foster care. The department appears to have

1

disregarded father's complaints and as a result of such complaints, the relationship between father and the department has deteriorated significantly.

4. There are many illustrations which indicate the conflict exists and the department has lost its impartiality.

5. A home study was requested of father's home. The home study was initially approved. However, for some reason after the filing of the civil suit against JCDCYF, the department requested additional information, and utilized the additional information to disqualify father from placement.

6. The initial permanent plan was to return the children to their father in California. This plan was changed after father filed a civil suit against the JCDCYF.

7. This is a sibling group of 4, the oldest being 15 years of age. The likelihood of them remaining together as a family is negligible and the likelihood of adoption is minimal, given the ages of the children and the fact the children do not support adoption. Lauren will be 16 in September, Candace will be 15 in November, Alex is nearly 14 and Tyrese is 7 years old. They have a 17 ½ year old full sibling who resides with their father. They have 7 half-siblings with whom they would be cut off from. A termination of parental rights and adoption is not a recommendation that makes sense for these children.

8. There is no evidence father has ever caused harm to these children. The initial allegations involved mother only.

9. There has been no attempt to bring the conflict before the court by JCDCYF for a legal determination as to whether or not a conflict exists which would disqualify JCDCYF from continuing on this case. In *T.D.* the Appeals Court determined there was a conflict due to the civil suit filed against the department, but did not overturn the termination order because the Trial Court took significant precautions to make sure there was no issue of fairness or bias. The Trial Court appointed a CASA to speak on behalf of the best interests of the children. The Trial Court monitored very closely the services that were provided. Independent experts were provided throughout the case at the direction of the Trial Court. The Trial Court did not rely on the social worker with the department, but relied primarily on the independent experts. None of this has been done in this case.

10. The language contained in *Petition of Department of Social Services to Dispense with Consent to Adoption*, 429 N.E. 2d 685 (Mass, 1981) clearly illustrates the purpose in disqualifying the department when a conflict arises. The Massachusettes court pointed out the "vastly superior resources for investigation and presentation of its case" enjoyed by the department. They also point out that "judges place great confidence in the reports of the department," and therefore that "the department is extraordinarily influential in its capacity to interfere with family relationships between parents and children."

2

11. In order to preserve and maintain the integrity of due process and prevent delay and harm to the children, it is incumbent on this Court to determine whether such a conflict exists and appoint another county to proceed with this case.

Date: June 16, 2006

_TERRY ROSS_, Attorney for Respondent

## CERTIFICATE OF MAILING

I hereby certify that on June 16, 2005 a true and correct copy of the above was placed in the U.S. Mail or transmitted via facsimile to the following:

Larry Bowling, Esq.
Assistant County Attorney
303-271-8937

Laurie Cohen-Ringler, Esq.
_Guardian ad Litem_
FAX 303-831-0144

Graham Peper, Esq.
Attorney for Respondent
FAX 303-837-0311

3