

Slip Copy
Slip Copy, 2007 WL 81928 (D.Nev.)
**(Cite as: Slip Copy)**

Page 1

# H

Hudnall v. Panola County
D.Nev.,2007.
Only the Westlaw citation is currently available.
United States District Court,D. Nevada.
Doris HUDNALL, Michael Guthrie, and Angela
Guthrie, as representatives and beneficiaries of Hamp
Williams's Estate, Plaintiffs,
v.
PANOLA COUNTY, et al., Defendants.
No. 2:06-cv-0490-RCJ-LRL.

Jan. 5, 2007.

Doris Hudnall, Las Vegas, NV, pro se.
Michael Guthrie, Las Vegas, NV, pro se.
Angela Guthrie, Las Vegas, NV, pro se.
Scott D. Fleming, Hale Lane Peek, et al, Ken M.
Webster, Hall, Prangle, and Schoonveld, Ltd., Kurt
R. Bonds, Sophia G. Long, Alverson Taylor
Mortensen, Philip M. Hymanson, et al, Bruce
Alverson, Karie N. Wilson, Alverson Taylor
Mortensen & Sanders, Joseph A. Gutierrez, Beckley
Singleton, Chtd., Adam D. Smith, Paul R.
Hejmanowski, Lionel Sawyer & Collins, Las Vegas,
NV, Tom P. Allen, McDaniel & Allen, P.C., Thad
Dameris, Trevor R. Jefferies, Hogan & Hartson, Llp,
Reagan M. Brown, Fulbright & Jaworski L.L.P.,
Houston, TX, Booker T. Evans, Jr., Greenberg
Traurig Llp, Phoenix, AZ, Kent F. Larsen, Smith
Larsen & Wixom, Las Vegas, NE, Ken Cross, Office
of the Texas Attorney General, Austin, TX, William
J. Frey, Attorney General's Office, Carson City, NV,
for Defendants.

## ORDER

ROBERT C. JONES, United States District Judge.
*1 This matter comes before the Court on Defendant
Vinson & Elkins's ("V & E") Motion to Dismiss (#
20), Defendant Texas General Land Office's ("Texas
GLO") Motion to Dismiss (# 23), Defendant
Commercial National Bank's Motion to Dismiss (#
27), Defendants EOG Resources, Inc. ("EOG"); EOG
Resources-Carthage, Inc. ("Carthage"); and ERSO
Inc.'s ("ERSO") Consolidated Motion to Dismiss (#
29), Defendant ExxonMobil's Consolidated Motion
to Dismiss (# 38), Defendant JP Morgan Bank's
Motion to Dismiss (# 40), Defendant Allison
Family's Motion to Dismiss (# 64), Defendants
Alfred G. Glassell Jr., Glassell Producing Co., and
Glassell Family Trust's (collectively "Glassell
Defendants") Motion to Dismiss (# 65), Defendant
Panola County's Motion to Dismiss (# 66), Defendant
First State Bank & Trust's Motion to Dismiss (# 103),
and Defendant International Paper Company's
Motion to Dismiss (# 110). Also pending before this
Court are Plaintiffs' Motions to Extend Time. (# 50-#
55.) It is hereby ordered that Defendants' above-
mentioned Motions to Dismiss are *granted* and
Plaintiffs' Motions to Extend Time are *denied.*

## BACKGROUND

On June 12, 2006, Plaintiffs Doris Hudnall, a citizen
and resident of Clark County, Nevada, Michael
Guthrie, a citizen and resident of Cook County,
Illinois, and Angela Guthrie, a citizen and resident of
Clark County, Nevada (collectively "Plaintiffs") filed
their Complaint (# 4) with this Court, alleging that
Plaintiffs (as representatives of Hamp Williams's
Estate) are rightful owners to 10,000 acres of land
located in Carthage, Texas. According to Plaintiffs,
they "are heirs of the Estate of Hamp Williams," who
died on April 6, 1930. (# 4 at 5-6.) Plaintiffs claim
that Hamp Williams ("Williams") applied for, and
received, a land grant from the Texas GLO for which
he was eligible due to his service in the United States
Colored Heavy Artillery Unit of the Civil War. *(Id.* at
5.) Plaintiffs argue that shortly after receiving his
land from the Texas GLO, Williams discovered oil,
natural gas, and timber on his property. Plaintiffs
further allege that numerous individuals and entities
thereafter "robbed his land of its natural resources."
*(Id.* at 6.) According to Plaintiffs, several entities
illegally acquired Williams's lands by forcing him to
vacate his property after threatening his life and
killing his son. In order to secure his land and other
assets for his family, Williams established a trust and
placed the 10,000 acres under guardianship for his
children and grandchildren.

Plaintiffs now argue that the above-mentioned
Defendants have continued the conspiracy to deprive
Williams and his heirs of their rightful claim to the
Carthage land.[FN1] Specifically, Plaintiffs allege eight
causes of action: (1) Fraud and Deceit; (2)
Conspiracy to Commit and Aid a Fraud; (3)
Negligent Misrepresentation; (4) Unjust Enrichment;
(5) Constructive Trust; (6) Conversion; (7) Punitive
Damages; and (8) Declaratory Relief. *(Id.,* 8-14.)

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                    Page 2
Slip Copy, 2007 WL 81928 (D.Nev.)
**(Cite as: Slip Copy)**

Each Defendant in this action has filed a motion to dismiss asking the Court to dismiss this case based on several legal theories. Although not every Defendant has moved the Court to dismiss on the same grounds, Defendants ask this Court to dismiss Plaintiffs' claims based on the following: (1) lack of personal jurisdiction; (2) improper venue; (3) failure to state a claim upon which relief may be granted; and (4) sovereign immunity.

> FN1. The case pending before this Court is not Plaintiffs first attempt to recover damages based on the alleged fraudulent transfer of title to Williams's property. On December 30, 2002, Plaintiffs filed an adversary proceeding, *Michael Guthrie, et al. v. Enron Corp.,* No. 02-8132A, in the United States Bankruptcy Court for the Southern District of New York. Plaintiffs allege in their Complaint that they are secured creditors with respect to the property made the basis of this lawsuit in Enron Corp.'s ("Enron") bankruptcy proceeding pending in the Southern District of New York. (# 4.) Plaintiffs further allege that the bankruptcy court gave them preferred status on July 3, 2002, as evidenced by minutes of proceedings held on June 13, 2002. *(See id.)* Once granted that status, Plaintiffs filed proofs of claims against Enron's bankruptcy estate, seeking to recover in excess of $100 billion allegedly owed to them as a result of Enron and its affiliates' unlawful acquisition of the property at issue in this case. (# 29-7.) Plaintiffs filed the Adversary Proceeding while those claims were pending. In 2003, the Court granted Enron's objections to the proofs of claims, disallowing and expunging them in their entirety. (# 29-8.) The causes of action raised in the Adversary Proceeding are nearly identical to those pled in this lawsuit: fraud, misrepresentation, unjust enrichment, constructive trust, and conversion. (# 29-2.) After considering allegations involving the same facts, causes of action, and even some of the same parties named in the present Complaint, the bankruptcy court dismissed Plaintiffs' adversary proceeding in its entirety on March 13, 2003. (# 29-3.)

**DISCUSSION**

## I. Personal Jurisdiction

**\*2** Nine Defendants [FN2] seek dismissal on personal jurisdiction grounds. These Defendants contend that the Court lacks personal jurisdiction over them and bring Motions to Dismiss under Federal Rule of Civil Procedure 12(b)(2). These Defendants successfully demonstrate that their activities, both in general and in association with the underlying allegations, are far enough removed from the State of Nevada so as to strip this Court of personal jurisdiction in the matter.

> FN2. The following Defendants move to dismiss based on personal jurisdiction: V & E(# 20); Commercial National Bank (# 27); EOG, Carthage, and ERSO (Consolidated # 29); Allison Family (# 64); Glassell Defendants (# 65); Panola County (# 66); and First State Bank & Trust (# 103).

### A. Standard of Review

"Where a defendant moves to dismiss a complaint for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that jurisdiction is appropriate." *Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 800 (9th Cir.2004).* "Although the plaintiff cannot simply rest on the bare allegations of the complaint, uncontroverted allegations in the complaint must be taken as true." *Id.* (internal quotations omitted). "For a court to exercise personal jurisdiction over a nonresident defendant, that defendant must have at least 'minimum contacts' with the relevant forum such that the exercise of jurisdiction 'does not offend traditional notions of fair play and substantive justice.' " *Id.* (quoting *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945)). Because Nevada's long arm jurisdictional statute "is coextensive with federal due process requirements, the jurisdictional analyses under state law and federal due process are the same." *Schwarzenegger,* 374 F.3d at 800-01; *see also* Nev.Rev.Stat. Ann. § 14.065 (LexisNexis 2006).

### B. General Jurisdiction

A court may exercise personal jurisdiction over a defendant either through general or specific jurisdiction. General jurisdiction is appropriate when a defendant engages in continuous and systematic contacts that "approximate physical presence in the forum state," even if the underlying cause of action is

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                        Page 3
Slip Copy, 2007 WL 81928 (D.Nev.)
(Cite as: Slip Copy)

unrelated to those general activities. *Schwarzenegger, 374 F.3d at 801*; *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 416 (1984). In this case, the Defendants all principally reside and conduct business in Texas or other nearby regions in the Southeast, and have had scarce, if any, contacts with the state of Nevada.

Defendant V & E is a Texas-based law firm. None of its partners are licensed in Nevada. V & E is not licensed to do business in Nevada, does not regularly conduct business in Nevada, has no real or personal property in Nevada, and maintains no records in Nevada. While V & E has sporadically represented clients in Nevada, these representations have not been continuous or systematic.

Commercial National Bank is not incorporated in Nevada, has no places of business in Nevada, and does not have ATMs or banking services offered or marketed to Nevada residents. The bank is only located in the Southeast, with branch locations in Louisiana, Alabama, Florida, Mississippi, Georgia, and Tennessee. Thus, Commercial National Bank does not have sufficient ties with Nevada to justify a finding of general jurisdiction. Similarly, Defendant First Bank & Trust has one branch located in Carthage, Texas. First Bank & Trust does not have a place of business in Nevada, and it does not offer services in this forum.

*3 Carthage, ERSO, and EOG also have limited connections with Nevada. None of these Defendants reside in Nevada. Carthage and ERSO have never done business in the state and have no history of contacts with Nevada. EOG, on the other hand, has been involved in some business activities in Nevada, but these activities occurred after Plaintiffs' claims arose. Since 2003, EOG has undertaken mineral lease activity in Nevada, engaging in commerce with Nevada residents. However, the events that give rise to Plaintiffs' suit against EOG occurred several years prior to 2003. The Ninth Circuit has held that for purposes of determining minimum contacts, due process requires that the defendant have fair warning that they might be brought to court in that state based on their activities at the time of the events leading to the suit, rather than at the time the suit was filed. *Steel v. United States*, 813 F.2d 1545, 1549 (9th Cir .1987). Therefore, EOG's business activities in Nevada after 2003 do not constitute the requisite minimum contacts to establish general jurisdiction in this case. Furthermore, the level of contacts with a forum state necessary to establish general jurisdiction is "quite high." *Shute v. Carnival Cruise Lines*, 897

F.2d 377, 380 (9th Cir.1990). EOG has no offices, facilities, bank accounts, or regular expenses attributable to their presence in Nevada. As such, this Court does not have general jurisdiction over EOG.

The Allison family, comprising various family beneficiaries of a trust held by George Thomas Allison Jr. and Conrad Allison, also has scant ties to the forum. No Allison family member has ever owned property or resided in Nevada. One family member has been to Nevada on business once while defending a client in Las Vegas courts, but this representation was wholly disconnected from the present dispute. The family has only visited the state on limited occasions for vacations and leisure activities. Similarly, the Glassell Defendants lack substantial contacts with Nevada. The Glassell family members and their Foundation and Producing Company do not reside in Nevada, are not licensed to do business in Nevada, do not own any real or personal property in Nevada, and do not maintain any records in Nevada. Therefore, the Allison Family and Glassell Defendants do not have sufficient contacts with the forum to support general jurisdiction.

Finally, Panola County is a political subdivision of Texas. It has no offices in Nevada, is not authorized to do business in Nevada, has no employees in Nevada, owns no property in Nevada, and has never carried on any business in Nevada. Given this total lack of nexus between Panola and Nevada, general jurisdiction is inappropriate.

Given the clear lack of "substantial, continuous, and systematic" contacts between the moving Defendants and the forum of Nevada, this Court lacks general jurisdiction over Defendants V & E, Commercial National Bank, First State Bank & Trust, Carthage, EOG, ERSO, the Allison Family, the Glassell Defendants, and Panola County.

### C. Specific Jurisdiction

*4 If a court lacks general jurisdiction over a defendant, it can still hear the case if specific jurisdiction is applicable. The Ninth Circuit utilizes a three-prong test to analyze specific jurisdiction: (1) whether the defendant purposefully availed itself of the "privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws"; (2) whether the claim "arises out of or relates to defendant's forum-related activities"; and (3) whether the exercise of jurisdiction comports "with fair play and substantive justice, i.e., it must be

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                     Page 4
Slip Copy, 2007 WL 81928 (D.Nev.)
(Cite as: Slip Copy)

reasonable." *Schwarzenegger, 374 F.3d at 802.* Applying this test to the specific Defendants, it becomes clear that this Court also lacks specific jurisdiction over these parties.

### 1. *Purposeful Availment*

The Defendants seeking dismissal for lack of personal jurisdiction have not purposefully availed themselves of the benefits of conducting business in Nevada or sought protection under Nevada law. Plaintiffs' principal allegation as to V & E is that the firm drafted a trust in Texas, almost sixty years ago. Plaintiffs do not allege that those events have any nexus with Nevada. V & E was not representing a Nevada party in drafting the purported trust. Defendants Commercial National Bank and First State Bank & Trust have no principal places of business in the state and does not offer any banking services to Nevada residents. Plaintiffs' allegations do not contend that the Bank performed any activities in Nevada. Similarly, the Allison Family and Glassell Defendants reside, conduct business, and own property in Texas. While these families have had incidental contacts with Nevada in the form of isolated business ventures and vacations, these activities do not amount to purposeful availment. Finally, Panola County has clearly not interjected itself into the forum as it is a political subdivision wholly operating in Texas.

Defendant EOG is the one Defendant that has conducted meaningful business activities in the forum. Since 2003, EOG has engaged in some mineral lease activity in Nevada. However, as previously noted, these activities began after the events forming the basis for Plaintiffs' allegations occurred. "Only contacts occurring prior to the event causing litigation may be considered." *Farmers Ins. Exch. v. Portage La Prairie Mut. Ins. Co., 907 F.2d 911, 913 (9th Cir.1990).* EOG's contacts with the state are also not substantial and are completely unrelated to the alleged harmful acts that took place in Texas. Therefore, EOG's minimal business contacts with Nevada do not amount to purposeful availment in this matter.

### 2. *Claim Must Arise Out of Defendants' Forum Related Activities*

Second, as already discussed, Plaintiffs have failed to tie their allegations in any way to activities by the Defendants in Nevada. The underlying events in the Complaint all relate to a contested piece of land, and purported fraudulently cancelled trust, in Texas. V & E's creation of the trust, the alleged misrepresentations by the Defendant banks and the County, and the actions by the Glassell Defendants and Allison family all occurred, if they occurred at all, in Texas. There is no connection between the allegations and the desired forum. Plaintiffs have not stated a valid ground for personal jurisdiction over the moving defendants.

### 3. *Fair Play and Substantive Justice*

**\*5** Finally, jurisdiction over the Defendants in Nevada would not comport with fair play and substantive justice. There are no allegations linking any of these parties with Nevada, and they would not have reasonably anticipated being brought before a Nevada court for their actions in the present matter. Therefore, this Court does not have specific jurisdiction over the Defendants discussed above.

None of the moving Defendants have the requisite contacts with the forum of Nevada to establish either general or specific personal jurisdiction in this action. The Defendants are all out-of-state entities and individuals who have rarely visited the forum, and then only for personal, unrelated affairs. Furthermore, Plaintiffs' claims all arise out of activities that occurred in Texas, rather than Nevada.

### II. Sovereign Immunity

Two Defendants, the Texas GLO and Panola County, seek immunity to these proceedings under the Eleventh Amendment. The Eleventh Amendment bars suits against a state or its agencies, regardless of the kind of relief sought, absent consent by the state or abrogation of immunity by congressional action. *Pennhurst v. Halderman, 465 U.S. 89, 100 (1984).* The Texas GLO and Panola County are both state entities entitled to immunity protection. The Texas GLO is an arm of the state of Texas with statewide jurisdiction. Panola County is a political subdivision of Texas. Previous courts have held that both types of entities are entitled to sovereign immunity protection. *See, e.g., John G. and Marie Stella Kenedy Mem 'l Found. v. Mauro, 21 F.3d 667, 670-73 (5th Cir.1994)* (barring § 1983 action against the Commissioner of the Texas GLO because of Eleventh Amendment immunity); *Montgomery County Hosp. Dist. v. Smith, 181 S.W.3d 844, 851 (Tex.Ct.App.2005)* ("Governmental immunity ... protects political

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2007 WL 81928 (D.Nev.)
(Cite as: Slip Copy)

subdivisions of the State, including counties, cities, and school districts"). There has been no waiver of immunity by the state or congressional abrogation of the state's immunity in this case. Therefore, The Texas GLO and Panola County are entitled to sovereign immunity under the Eleventh Amendment, and the case should be dismissed as to them.

### III. Venue

All but three Defendants [FN3] ask the Court to dismiss Plaintiffs' Complaint pursuant to Federal Rule of Civil Procedure 12(b)(3) for improper venue. Because Plaintiffs' sole basis for federal subject matter jurisdiction in this case is diversity of citizenship, the applicable venue statute is 28 U.S.C. § 1391(a). Section 1391(a) provides that venue in a suit in which the plaintiff bases jurisdiction upon diversity of citizenship is proper in:

> FN3. The Following Defendants seek dismissal based on improper venue: Commercial National Bank (# 27); Defendants EOG, Carthage, and ERSO (# 29); ExxonMobil (# 38); JP Morgan Chase Bank N.A. (# 40); Allison Family (# 64); Glassell Defendants (# 65); Panola County (# 66); First State Bank & Trust (# 103); and International Paper (# 110).

(1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.
*6 28 U.S.C. § 1391(a); see also Decker Coal Co. v. Commonwealth Edison Co., 805 F.2d 834, 841-42 (9th Cir.1986). Based on the applicable venue statute, Defendants argue that the District of Nevada is not a proper venue for this case.

### A. Venue Under § 1391(a)(1)

As noted above, section 1391(a)(1) provides that venue is proper in a judicial district where any defendant resides, if *all* defendants reside in the same state. § 1391(a)(1) (emphasis added). In this case, all Defendants do not reside in the same state. Based on

Plaintiffs' pleadings, Plaintiffs acknowledge that some Defendants reside in Texas while others reside in California and Louisiana. Plaintiffs further state that some Defendants reside "globally" or "nationally." Plaintiffs fail to allege or demonstrate that any Defendant resides in Nevada and that all Defendants reside in the same state. Accordingly, the Court cannot maintain venue under section 1391(a)(1).

### B. Venue Under § 1391(a)(2)

Venue is proper under section 1391(a)(2) in a "judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated ...." § 1391(a)(2). In assessing whether events or omissions giving rise to the claim are substantial for the purpose of establishing venue under section 1391(a)(2), the Court must look at the dispute's nature. *See, e.g ., Flamingo Indus., Ltd. v. United States*, No. C 00-2484 MMC, 2004 U.S. Dist. LEXIS 17530, at *3 (N.D.Cal. Aug. 23, 2004) (citing *Cottman Transmission Sys., Inc. v. Martino*, 36 F.3d 291, 295 (3rd Cir.1994)). Events or omissions that might only have some tangential connection with the dispute are not sufficient to serve as a basis for maintaining venue under section 1391(a)(2). *Id.*

Plaintiffs' Complaint indicates that the actions giving rise to their claims all occurred in Texas. Specifically, Plaintiffs allege that Williams owned or lived on approximately 10,000 acres in Carthage, Texas. According to Plaintiffs, Williams placed the title to this land in trust for his heirs in Texas before his death. Plaintiffs also allege that the Glassell Defendants, who are Texas residents, "suppressed and erased" certain trust accounts and in their place fabricated other entries in an attempt to rob Williams's heirs of their title to the Carthage property. Plaintiffs further argue that the property became subject to the Glassell Family Trust, an entity alleged to be doing business in Harris County, Texas. Finally, Plaintiffs contend that all Defendants are liable for damages caused by actions committed in Texas to the Texas property and the resources derived from that property. Plaintiffs' only argument that venue in Nevada is proper is that the Defendants should have known that Williams's heirs could be located anywhere in the United States, including Nevada. However, Plaintiffs' location is irrelevant to the venue analysis. Thus, because the events giving rise to Plaintiffs' lawsuit occurred solely in Texas, the Court finds that venue in the District of Nevada is

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

improper. *See, e.g., Engel v. CBS, Inc., 886 F.Supp. 728, 732 (C.D.Cal.1995)* (stating that when events giving rise to a cause of action occur solely within another judicial district, maintaining venue is improper).

### C. Venue Under § 1391(a)(3)

**\*7** The remaining venue provision under section 1391(a) indicates that venue is proper in a district in "which any defendant is subject to personal jurisdiction at the time the action is commenced, *if* there is no district in which the action may otherwise be brought." § 1391(a)(3) (emphasis added). As discussed above, Plaintiffs have alleged sufficient facts to conclude that venue and personal jurisdiction could be established in Texas. Therefore, venue could be maintained in a federal district court in Texas, which negates section 1391(a)(3)'s applicability because section 1391(a)(3) only applies "if there is no district in which the action may otherwise be brought." *Id.* Accordingly, the Court grants all Defendants' requests to dismiss pursuant to Rule 12(b)(3) because venue in the District Court of Nevada is improper.

Pursuant to the above analysis, the Court dismisses this action based on lack of personal jurisdiction, improper venue, and sovereign immunity. Because this Court lacks jurisdiction over the defendants and venue is improper, the Court does not address the merits or rule on the various motions to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).

### IV. Plaintiffs' Motion to Extend Time

Plaintiffs have filed a motion asking the Court to extend time and delay its ruling on the motions to dismiss currently pending in this matter. Specifically, Plaintiffs state that they need more time to "properly answer and continue to serve all (16) Defendants in Complaint." (# 52.) In addition, Plaintiffs state they are currently seeking counsel in this action. *(Id.)* The Court denies Plaintiffs' Motion to Extend Time. Federal Rule of Civil Procedure 6(b) states in part the following:
When by these rules or by a notice given thereunder or by order of court an act is required or allowed to be done at or within a specified time, the court for cause shown may at any time in its discretion (1) with or without motion or notice order the period enlarged if request therefor is made before the expiration of the period originally prescribed or as

extended by a previous order, or (2) upon motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect....

Fed.R.Civ.P. 6(b).

Plaintiffs have not provided any evidence that good cause exists as to why the Court should extend time. Plaintiffs failed to file a responsive pleading in conformity with Local Rule 7. Not only did Plaintiffs file their response late, they have failed to indicate any reason as to why they failed to comply with the Court's deadlines. Because Plaintiffs have made this motion after the specified time in which to respond has expired, they must show excusable neglect. Fed.R.Civ.P. 6(b). A request for more time to properly answer and serve defendants, without more, is not sufficient to constitute excusable neglect. *See, e.g., McGinnis v. Shalala,* 2 F.3d 548, 550-51 (5th Cir.1993). In addition, ignorance of the law is not excusable neglect. *See Townsel v. County of Contra Costa,* 820 F.2d 319, 320 (9th Cir.1987). Furthermore, because the Court must dismiss these claims as analyzed above, a request for more time would also be futile. Because Plaintiffs have failed to establish a legitimate reason to extend time, the Court denies Plaintiffs' Motions to Extend Time. (# 50-# 55.)

### CONCLUSION

**\*8** The Court grants each Defendants' Motion to Dismiss in this case. The events underlying Plaintiffs' allegations all took place near the Texas-Louisiana border. At the time Plaintiffs filed their Complaint, each of the moving Defendants resided and practiced business exclusively in the Texas-Louisiana area. As such, this Court does not have personal jurisdiction over the Defendants and this District is the improper venue. In addition, the Court denies Plaintiffs' Motions to Extend Time. (# 50-# 55.)

Accordingly, IT IS HEREBY ORDERED that the following motions are *granted:*

Defendant V & E's Motion to Dismiss (# 20) because this Court lacks personal jurisdiction over the Defendant.

Defendant Texas GLO's unopposed Motion to Dismiss (# 23) because it is immune from suit under the Eleventh Amendment.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2007 WL 81928 (D.Nev.)
**(Cite as: Slip Copy)**

Defendant Commercial National Bank's Motion to Dismiss (# 27) because the Court lacks personal jurisdiction and venue is improper.

Defendants EOG, Carthage, and ERSO's Consolidated Motion to Dismiss (# 29) because the Court lacks personal jurisdiction and venue is improper.

Defendant ExxonMobil's Motion to Dismiss (# 38) because of improper venue.

Defendant JP Morgan Chase Bank N.A.'s Motion to Dismiss (# 40) because of improper venue.

Defendant Allison Family's Motion to Dismiss (# 64) because the Court lacks personal jurisdiction and venue is improper.

Defendant Glassell Family's unopposed Motion to Dismiss (# 65) because the Court lacks personal jurisdiction and venue is improper.

Defendant Panola County's unopposed Motion to Dismiss (# 66) because of sovereign immunity, lack of personal jurisdiction, and improper venue.

Defendant First State Bank & Trust's Motion to Dismiss (# 103) because the Court lacks personal jurisdiction and venue is improper.

Defendant International Paper's Motion to Dismiss (# 110) because of improper venue.

IT IS FURTHER ORDERED that Plaintiffs' Motions to Extend Time (50-55) are denied.

D.Nev.,2007.
Hudnall v. Panola County
Slip Copy, 2007 WL 81928 (D.Nev.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d                                              Page 1
Not Reported in F.Supp.2d, 2005 WL 1838973 (D.Or.)
**(Cite as: Not Reported in F.Supp.2d)**

Simpson v. Housing Authority of County of Lake
D.Or.,2005.
Only the Westlaw citation is currently available.
United States District Court,D. Oregon.
IDA SIMPSON, Plaintiff,
v.
HOUSING AUTHORITY OF THE COUNTY OF
LAKE, Defendant.
**No. Civ. 05-638-ST.**

July 29, 2005.

Ida Simpson, Vancouver, WA, pro se.

ORDER ADOPTING MAGISTRATE'S FINDINGS
AND RECOMMENDATIONS
MOSMAN, J.
*1 On May 31, 2005, Magistrate Judge Stewart
issued Findings and Recommendation (doc. # 6) in
the above-captioned case RECOMMENDING that
the application to proceed in forma pauperis be
GRANTED, but the complaint should be dismissed
for lack of jurisdiction. After a *de novo* review, the
court ADOPTS the magistrate's findings and
recommendation without modifications as the
opinion of this court. See 28 U.S.C. § 636.

IT IS SO ORDERED.

FINDINGS AND RECOMMENDATION
STEWART, Magistrate J.

*INTRODUCTION*

Plaintiff Ida Simpson, appearing *pro se,* has filed an
application to proceed *in forma pauperis* (docket #
1). Her application reveals that she is not employed,
receives disability payments, and has limited assets.
Hence, plaintiff cannot afford the costs of this
proceeding. However, even if plaintiff does qualify
for *in forma pauperis* status, for the reasons set forth
below, plaintiff's Complaint should be dismissed for
lack of jurisdiction with leave granted to replead.

*STANDARDS*

"In federal court, dismissal for failure to state a claim

is proper 'only if it is clear that no relief could be
granted under any set of facts that could be proved
consistent with the allegations." ' *Cervantes v. City of
San Diego,* 5 F.3d 1273, 1274 (9th Cir1993), quoting
*Hishon v. King & Spalding,* 467 U.S. 69, 73, 104
S.Ct. 2229, 81 L.Ed.2d 59 (1984); *Tanner v. Heise,*
879 F.2d 572, 576 (9th Cir1989). In making this
determination, this court accepts all allegations of
material fact as true and construes the allegations in
the light most favorable to the nonmoving party.
*Tanner,* 879 F.2d at 576.

Federal courts are courts of limited jurisdiction and a
case is presumed to fall outside a federal court's
jurisdiction unless proven otherwise. *Kokkonen v.
Guardian Life Ins. Co. of Am.,* 511 U.S. 375, 377,
114 S.Ct. 1673, 128 L.Ed.2d 391 (1994). A district
court is empowered to hear only those cases which
are within the judicial power conferred by the United
States Constitution and those which fall within the
area of jurisdiction granted by Congress. *Richardson
v. United States,* 943 F.2d 1107, 1112-13 (9th
Cir1991), *cert denied,* 503 U.S. 936, 112 S.Ct. 1473,
117 L.Ed.2d 617 (1992). Under Rule 12(h) of the
Federal Rules of Civil Procedure, this court is
required to dismiss an action "[w]henever it appears
by suggestion of the parties or otherwise that the
court lacks jurisdiction of the subject matter."
*Augustine v. United States,* 704 F.2d 1074, 1077 (9th
Cir1983).

*DISCUSSION*

I. *Subject Matter Jurisdiction*

According to the Civil Cover Sheet, plaintiff claims
jurisdiction in this court based on a federal question.
That basis for jurisdiction arises under 28 USC §
1331 which grants federal district courts original
jurisdiction over "all civil actions arising under the
Constitution, laws or treaties of the United States."

Plaintiff's Complaint alleges that because "of the
drastic action taken by the Illinois Lake County
Housing Authority," it is "difficult or impossible to
obtain permanent housing." As a result, she asks the
court "to consider dismissal of this debt because of
hardship incurred from excessive hotel fees." Based
on the exhibits attached to the Complaint, the debt to

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2005 WL 1838973 (D.Or.)
(Cite as: Not Reported in F.Supp.2d)

Page 2

which plaintiff refers apparently is a Judgment against her for $1,184.50 obtained by the Lake County Housing Authority on December 1, 2003, in the Circuit Court of the Nineteenth Judicial Circuit, Lake County, Illinois, in connection with an Forcible Entry and Detainer action to evict plaintiff.

\*2 Plaintiff appears to request this court to set aside a state court judgment entered against her. To the extent that plaintiff is attempting to relitigate a judgment entered against by a state court, her claim is most likely barred because a litigant may not relitigate in federal court those issues decided by a state court. "[I]ssues actually litigated in a state-court proceeding are entitled to the same preclusive effect in a subsequent federal § 1983 suit as they enjoy in the courts of the State where the judgment was rendered." *Migra v. Warren City Sch. Dist. Bd. of Ed., 465 U.S. 75, 83, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984).*

Even though a state court judgment may erroneously decide constitutional or federal law issues, this court lacks jurisdiction to engage in appellate review of that judgment. *Texaco, Inc. v. Pennzoil Co., 784 F.2d 1133, 1141 (2nd Cir1986), rev'd on other grounds, 481 U.S. 1, 107 S.Ct. 1519, 95 L.Ed.2d 1 (1987).* "If the constitutional claims presented to a United States District Court are inextricably intertwined" with the merits of a judgment rendered in a state court proceeding, "then the District Court is in essence being called upon to review the state court decision. This the District court may not do." *Dist. of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 483, 103 S.Ct. 1303, 75 L.Ed.2d 206 n16 (1983).* A claim is:
inextricably intertwined with the state-court judgment if the federal claim succeeds only to the extent that the state court wrongly decided the issues before it. Where federal relief can only be predicated upon a conviction that the state court was wrong, it is difficult to conceive the federal proceeding as, in substance, anything other than a prohibited appeal of that state-court judgment.

*Pennzoil Co. v. Texaco, Inc., 481 U.S. 1, 25, 107 S.Ct. 1519, 95 L.Ed.2d 1 (1987)* (Marshall, J., concurring); *accord Canal Capital Corp. v. Valley Pride Pack, Inc., 169 F.3d 508, 512 (8th Cir1999)* ("A federal claim is inextricably intertwined with a state court judgment when "the relief requested in the federal action would effectively reverse the state court decision or void its ruling").

As explained by the Ninth Circuit:

[f]aced with the task of deciding our power to review constitutional issues which arise from a state court proceeding, we view the res judicata requirement of full and fair opportunity to litigate, and the *Feldman* 'inextricably intertwined' barrier as two sides of the same coin. Under the rubric of either 'jurisdiction' or 'res judicata,' the crux of the question is whether there has already been actual consideration of and a decision on the issue presented. If consideration and decision have been accomplished, action in federal court is an impermissible appeal from the state court decision. If no consideration has been given, or any decision on the matter is ambiguous, it is unlikely that the issues presented to the state high court and to the federal court are so 'inextricably intertwined' that the federal court cannot take jurisdiction. Nor is it likely that there will have been a full enough and fair enough opportunity for litigation to warrant the claim preclusive effect of res judicata.

\*3 *Robinson v. Ariyoshi, 753 F.2d 1468, 1472 (9th Cir1985), vacated on other grounds, 477 U.S. 902, 106 S.Ct. 3269, 91 L.Ed.2d 560 (1986)* (citations omitted), quoted and cited with approval in *G.C. & K.B. Investments, Inc. v. Wilson, 326 F.3d 1096, 1103 (9th Cir2003).*

Therefore, if plaintiff seeks to discharge a judgment entered by a state court in Illinois, then her proper course of action was to timely file an appeal in the Illinois state court system and then appeal to the United States Supreme Court. This court can only redetermine issues decided in a state court proceeding "if there is reason to doubt the quality, extensiveness, or fairness of procedures followed in prior litigation." ' *Haring v. Prosise, 462 U.S. 306, 317-18, 103 S.Ct. 2368, 76 L.Ed.2d 595 (1983),* quoting *Montana v. United States, 440 U.S. 147, 164 n. 11, 99 S.Ct. 970, 59 L.Ed.2d 210 (1979).* In other words, plaintiff may litigate issues previously decided in state court only by challenging the "quality, extensiveness, or fairness" of the procedures followed in state court. It is far from clear from the allegations in the Complaint that this is, or even could be, the basis for plaintiff's claim. Therefore, as presently pled in the Complaint, this court has no federal question jurisdiction over plaintiff's claim.

Another basis for jurisdiction in this court is diversity of citizenship between the parties under 28 USC § 1332. That statute requires that the parties be citizens of different states and that the amount in controversy exceed the sum of $75,000.00, exclusive of interest and costs. According to her address, plaintiff resides in, and presumably now is a citizen of, the State of

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                 Page 3
Not Reported in F.Supp.2d, 2005 WL 1838973 (D.Or.)
**(Cite as: Not Reported in F.Supp.2d)**

Washington, and defendant is located in the State of Illinois. However, plaintiff does not allege that the amount in controversy exceeds the sum of $75,000.00. To the contrary, the Civil Cover Sheet states that the amount requested in the Complaint is $1,184.60. Accordingly, this court has no diversity jurisdiction over plaintiff's claim.

The Complaint fails to reveal any other basis for jurisdiction. As a result, plaintiff should be required to amend her Complaint in this court within 30 days to state a claim arising under federal law.

*I. Personal Jurisdiction*

In addition, this court apparently lacks personal jurisdiction over defendant. Defendant is an Illinois entity and its actions giving rise to plaintiff's claim occurred in Illinois.

Whenever a judgment is sought against a defendant personally, such as for money damages or an injunction, the court must have personal jurisdiction over the defendant. Plaintiff has the burden to allege and prove sufficient facts to establish personal jurisdiction over defendants. *Brainerd v. Governors of the Univ. of Alberta,* 873 F.2d 1257, 1258 (9th Cir1989). "[A] federal district court can assert personal jurisdiction to the extent authorized by a particular federal statute governing service of process for the action being heard or, where no such particularized statute applies, to the extent authorized by the law of the state in which the district court sits." *T.M. Hylwa, M.D., Inc. v. Palka,* 823 F.2d 310, 312 (9th Cir1987). Since there is no particular federal statute which governs service of process for the action alleged here, Oregon law applies.

*4 Oregon permits a court to exercise jurisdiction over any party so long as "prosecution of the action against a defendant in this state is not incon-sistent with the Constitution of this state or the Constitu-tion of the United States." ORCP 4L. Oregon's long-arm statute is coextensive with the limits of federal due process. *Gray & Co. v. Firstenberg Mach. Co.,* 913 F.2d 758, 760 (9th Cir1990). Thus, plaintiff must establish that jurisdiction is proper under Oregon's long arm statute and that it comports with the requirements of due process. *Lake v. Lake,* 817 F.2d 1416, 1420 (9th Cir1987).

A federal court can exercise general personal jurisdiction as to persons domiciled within the forum state at the time the action is commenced. *Milliken v.*

*Meyer,* 311 U.S. 457, 61 S.Ct. 339, 85 L.Ed. 278 (1940). In other words, this court has personal jurisdiction over residents of the state of Oregon.

With respect to a defendant who does not reside in Oregon, plaintiff must allege and prove this court has either general jurisdiction or specific jurisdiction over that defendant. *Decker Coal Co. v. Commonwealth Edison Co.,* 805 F.2d 834, 839 (9th Cir1986). General jurisdiction exists when a defendant has "continuous and systematic" or "substantial" contacts with the forum state. *British American Ins. Co.,* 828 F.2d at 1442; *Lake,* 817 F.2d at 1420. To establish specific jurisdiction, a three-part test must be satisfied: "1) the nonresident defendant must have *purposefully availed* himself of the privilege of conducting activities in the forum by some affirmative act or conduct; 2) plaintiff's claim must *arise out of* or result from the defendant's forum-related activities; and 3) exercise of jurisdiction must be *reason-able." Roth v. Garcia Marquez,* 942 F.2d 617, 620-21 (9th Cir1991) (emphasis in original). The plaintiff must establish each of these factors for jurisdiction to lie. *McGlinchy v. Shell Chem. Co.,* 845 F.2d 802, 817-18 n. 10 (9th Cir1988); *see also Haisten v. Grass Valley Medical Reimbursement Fund, Ltd.,* 784 F.2d 1392, 1397 (9th Cir1986) (plaintiff bears burden of proving jurisdiction).

In other words, plaintiff's claims against nonresident defendants must arise out of their activities in Oregon. In the absence of any attempt to show that such defendants purposefully availed themselves of the privilege of conducting activities in Oregon, claims against such defendants must be dismissed for lack of personal jurisdiction. *See, e.g., Sher v. Johnson,* 911 F.2d 1357, 1361 (9th Cir1990).

Because defendant has no contact with Oregon and plaintiff's claims against it arise out of activities in Illinois, the Complaint also should be dismissed for lack of personal jurisdiction.

*RECOMMENDATION*

Based on the foregoing, plaintiff's application to proceed *in forma pauperis* (docket # 1) should be denied and the Complaint should be DISMISSED without prejudice. Plaintiff should be allowed 30 days to file an amended complaint, containing a short and plain statement of her claim against the defendant and the basis for subject matter and personal jurisdiction. Plaintiff is advised that failure to file an amended complaint will result in the

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                        Page 4
Not Reported in F.Supp.2d, 2005 WL 1838973 (D.Or.)
**(Cite as: Not Reported in F.Supp.2d)**

dismissal of this proceeding for lack of prosecution.

*SCHEDULING ORDER*

**\*5** Objections to the Findings and Recommendation, if any, are due June 17, 2005. If no objections are filed, then the Findings and Recommendation will be referred to a district court judge and go under advisement on that date.

If objections are filed, then a response is due within 10 days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will be referred to a district court judge and go under advisement.

A failure to timely file objections to any of these findings will be considered a waiver of plaintiff's right to *de novo* consideration of the factual issues and will constitute a waiver of plaintiff's right to appellate review of the findings of fact in any order or judgment entered by the district court.

*NOTICE*

This Recommendation is not is immediately appealable to the Ninth Circuit Court of Appeals. Any Notice of Appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment.

DATED this 31st day of May, 2005.

D.Or.,2005.
Simpson v. Housing Authority of County of Lake
Not Reported in F.Supp.2d, 2005 WL 1838973 (D.Or.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.



Slip Copy                                                                                                    Page 1
Slip Copy, 2007 WL 201054 (D.Or.)
**(Cite as: Slip Copy)**

**H**
Lietzke v. County of Montgomery
D.Or.,2007.
Only the Westlaw citation is currently available.
United States District Court,D. Oregon.
Bill LIETZKE, Plaintiff,
v.
COUNTY OF MONTGOMERY, et al., Defendants.
**Civil No. 06-1410-ST.**

Jan. 22, 2007.

Bill Lietzke, Montgomery, AL, pro se.

ORDER
KING, Judge.
*1 The Honorable Janice Stewart, United States
Magistrate Judge, filed Findings and
Recommendation on December 26, 2006. The matter
is before this court. See 28 U.S.C. § 636(b)(1)(B)
and Fed.R.Civ.P. 72(b). No objections have been
timely filed. This relieves me of my obligation to
give the factual findings *de novo* review. *Lorin Corp.*
*v. Goto & Co., Ltd.,* 700 F.2nd 1202, 1206 (8th
Cir.1983); *See also Britt v. Simi Valley Unified*
*School Dist.,* 708 F.2d 452, 454 (9th Cir.1983).
Having reviewed the legal principles *de novo*, I find
no error.

Accordingly, I ADOPT Magistrate Judge Stewart's
Findings and Recommendation (# 7).

IT IS HEREBY ORDERED that this action is
dismissed for lack of personal jurisdiction over any
defendant.

FINDINGS AND RECOMMENDATION
STEWART, Magistrate Judge.
On October 16, 2006, this court issued an Order
requiring plaintiff to either submit a filing fee or an
application to proceed *in forma pauperis.* In that
Order, this court advised plaintiff that, according to
the allegations in his Complaint, all of the acts of
defendants occurred in Alabama, not Oregon. As a
result, the defendants would not be subject to
personal jurisdiction in Oregon and should be
dismissed. To obtain personal jurisdiction over
defendants, this court advised plaintiff that he should
file his case in Alabama.

However, instead of dismissing this case and refiling
it in Alabama, plaintiff paid the $350 filing fee.
Therefore, this court ordered plaintiff to file an
Amended Complaint on or before January 11, 2007,
alleging a basis for the exercise of personal
jurisdiction in the District of Oregon over defendants.
Plaintiff has now filed an Amended Complaint, but
has failed to cure the jurisdictional defect.

*I. Subject Matter Jurisdiction*

Federal courts are courts of limited jurisdiction and
cannot hear every dispute presented by litigants.
*Stock West, Inc. v. Confederated Tribes of the*
*Colville Reservation,* 873 F.2d 1221, 1225 (9th
Cir1989). A district court is empowered to hear only
those cases which are within the judicial power
conferred by the United States Constitution and those
which fall within the area of jurisdiction granted by
Congress. *Richardson v. United States,* 943 F.2d
1107, 1112-13 (9th Cir1991), *cert denied,* 503 U.S.
936 (1992). Original jurisdiction must be based either
on a claim involving the Constitution, laws, or
treaties of the United States, 28 USC § 1331, or on
diversity of citizenship, involving suits involving
more than $75,000 between citizens of different
states, 28 USC § 1332.

To invoke federal question jurisdiction, plaintiff must
plead that defendants have violated some
constitutional or statutory provision. The Amended
Complaint alleges that jurisdiction is based "on the
existence of a federal question and amount in
controversy." With respect to "the existence of a
federal question," plaintiff alleges only that this
action "arises out of the Constitution of the United
States, Article III, Section II, as hereinafter more
fully appears." That constitutional provision simply
defines the extent of judicial power and is not
sufficient to put defendants or this court on notice of
what federal law or constitutional provision
defendants have violated. However, construing the
allegations of kidnapping and unlawful detention
liberally, plaintiff may be alleging an unlawful
seizure in violation of the Fourth Amendment of the
United States Constitution for which he seeks
damages under 42 USC § 1983.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2007 WL 201054 (D.Or.)
(Cite as: Slip Copy)

Page 2

## II. *Personal Jurisdiction*

**\*2** Even if the court has subject matter jurisdiction, it also must have personal jurisdiction over a defendant whenever a judgment is sought against a defendant personally. Plaintiff has the burden to allege and prove sufficient facts to establish personal jurisdiction over defendants. *Brainerd v. Governors of the Univ. of Alberta,* 873 F.2d 1257, 1258 (9th Cir1989). "[A] federal district court can assert personal jurisdiction to the extent authorized by a particular federal statute governing service of process for the action being heard or, where no such particularized statute applies, to the extent authorized by the law of the state in which the district court sits." *T.M. Hylwa, M.D., Inc. v. Palka,* 823 F.2d 310, 312 (9th Cir1987). Since there is no particular federal statute which governs service of process for the action alleged here, Oregon law applies.

Oregon permits a court to exercise jurisdiction over any party so long as "prosecution of the action against a defendant in this state is not inconsistent with the Constitution of this state or the Constitution of the United States." ORCP 4L. Oregon's long-arm statute is coextensive with the limits of federal due process. *Gray & Co. v. Firstenberg Mach. Co.,* 913 F.2d 758, 760 (9th Cir1990). Thus, plaintiff must establish that jurisdiction is proper under Oregon's long arm statute and that it comports with the requirements of due process. *Lake v. Lake,* 817 F.2d 1416, 1420 (9th Cir1987).

A federal court can exercise general personal jurisdiction as to persons domiciled within the forum state at the time the action is commenced. *Milliken v. Meyer,* 311 U.S. 457 (1940). In other words, this court has personal jurisdiction over residents of the state of Oregon.

With respect to a defendant who does not reside in Oregon, plaintiff must allege and prove this court has either general jurisdiction or specific jurisdiction over that defendant. *Decker Coal Co. v. Commonwealth Edison Co.,* 805 F.2d 834, 839 (9th Cir1986). General jurisdiction exists when a defendant has "continuous and systematic" or "substantial" contacts with the forum state. *British American Ins. Co.,* 828 F.2d at 1442; *Lake,* 817 F.2d at 1420. To establish specific jurisdiction, a three-part test must be satisfied: "1) the nonresident defendant must have *purposefully availed* himself of the privilege of conducting activities in the forum by some affirmative act or conduct; 2) plaintiff's claim must *arise out of* or result from the defendant's forum-

related activities; and 3) exercise of jurisdiction must be *reasonable.*" *Roth v. Garcia Marquez,* 942 F.2d 617, 620-21 (9th Cir1991) (emphasis in original). The plaintiff must establish each of these factors for jurisdiction to lie. *McGlinchy v. Shell Chem. Co.,* 845 F.2d 802, 817-18 n. 10 (9th Cir1988); *see also Haisten v. Grass Valley Medical Reimbursement Fund, Ltd.,* 784 F.2d 1392, 1397 (9th Cir1986) (plaintiff bears burden of proving jurisdiction).

**\*3** In other words, plaintiff's claims against nonresident defendants must arise out of their activities in Oregon. In the absence of any attempt to show that such defendants purposefully availed themselves of the privilege of conducting activities in Oregon, claims against such defendants must be dismissed for lack of personal jurisdiction. *See, e.g., Sher v. Johnson,* 911 F.2d 1357, 1361 (9th Cir1990); *Sanders v. United States,* 760 F.2d 869, 871 (8th Cir1985) (affirming dismissal under 28 USC § 1915(d) for want of personal jurisdiction).

Nothing in the Amended Complaint indicates that any of the alleged acts took place in the District of Oregon. Instead, based on the allegations in plaintiff's prior Complaint, it is clear that all of the acts by defendants occurred in Alabama, not in Oregon. Therefore, defendants are not subject to personal jurisdiction in the District of Oregon and should be dismissed.

### *RECOMMENDATION*

Plaintiff has already been given an opportunity to file an Amended Complaint to allege how this court has personal jurisdiction over defendants. He has failed to do so. Given that further amendment would be futile, this case should be dismissed for lack of personal jurisdiction over any defendant.

### *SCHEDULING ORDER*

Objections to the Findings and Recommendation, if any, are due **January 17, 2007.** If no objections are filed, then the Findings and Recommendation will be referred to a district judge and go under advisement on that date.

If objections are filed, then a response is due within 10 days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2007 WL 201054 (D.Or.)
**(Cite as: Slip Copy)**

Recommendation will be referred to a district judge and go under advisement.

## NOTICE

This Findings and Recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any Notice of Appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of a final judgment.

D.Or.,2007.
Lietzke v. County of Montgomery
Slip Copy, 2007 WL 201054 (D.Or.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

857 F.2d 1478                                                              Page 1
857 F.2d 1478, 1988 WL 96621 (C.A.9 (Cal.))
**(Cite as: 857 F.2d 1478)**

**C**
Reuter v. State of Cal.
C.A.9 (Cal.),1988.
NOTICE: THIS IS AN UNPUBLISHED
OPINION.(The Court's decision is referenced in a
"Table of Decisions Without Reported Opinions"
appearing in the Federal Reporter. Use FI CTA9 Rule
36-3 for rules regarding the citation of unpublished
opinions.)
   United States Court of Appeals, Ninth Circuit.
      Joseph Robert REUTER, Plaintiff-Appellant,
                           v.
STATE OF CALIFORNIA; County of Santa Clara,
                  Defendants-Appellees.
                     No. 86-2998.

              Submitted July 11, 1988.[FN*]
                 Decided Sept. 13, 1988.

N.D.Cal.

AFFIRMED.


Appeal from the United States District Court for the
Northern District of California (San Jose);  William
A. Ingram, District Judge,[FN**] Presiding.

Before GOODWIN, Chief Judge, and BARNES and
KILKENNY, Circuit Judges.

            MEMORANDUM [FN**]

*1 Joseph Robert Reuter appeals from a district court
order dismissing his 42 U.S.C. § 1983 civil rights
action against the State of California and numerous
state and county agencies.     The district court
dismissed the action with prejudice, relying upon the
domestic relations abstention doctrine.      Reuter
alleged that a state custody proceeding involving his
daughter interfered with his constitutional rights.
We affirm.


                        FACTS

In 1985 a petition was filed at the Santa Clara County
Juvenile Court for a declaration that Carol Reuter,
Joseph Reuter's daughter, be a ward of the court.
The Juvenile Court declared that Carol was a
dependent because Reuter failed to exercise proper

and effective parental care and control over Carol.

On April 29, 1986, Reuter filed a "Three Judge
Court-Class Action" in the Northern District of
California.    On June 10, 1985, the district court
denied Reuter's request to proceed in forma pauperis,
and dismissed the complaint with thirty days leave to
amend.     Reuter amended his complaint three times.
On November 12, 1986, Reuter filed a petition for
removal of a state court custody proceeding in the
district court.    On November 17, 1986, Reuter filed a
"Notice of Related Case."     On December 3, 1986,
the district court ordered that the two cases be
consolidated, and then dismissed the entire action
with prejudice on the ground that the domestic
relations abstention doctrine applied.[FN1]     Reuter
timely appeals.


                       ANALYSIS

Although Reuter's brief contains no stated basis for
appellate review and merely contains a recitation of
his complaint, Reuter is arguably contending that the
district court erred in abstaining from exercising its
jurisdiction in the case.    This contention lacks merit.

The district court dismissed Reuter's section 1983
action because of the domestic relations exception to
federal jurisdiction.       The district court noted that
Reuter's     allegations   concerning      the
unconstitutionality of state law and state procedure
used in Reuter's custody case went to the heart of the
exception.    Accordingly, because of the strong state
interest in domestic relations matters, the fact that the
case was pending before the state juvenile court, and
Reuter's ability to raise constitutional claims in the
state court, the district court decided to abstain from
hearing the case.      The district court also denied
Reuter's attempt to remove juvenile court
proceedings relating to his daughter's placement.

The domestic relations abstention doctrine requires
district courts to decline from exercising jurisdiction
in domestic relations cases where the primary issues
involve the status of parent and child.     Coats v.
Woods, 819 F.2d 236, 237 (9th Cir.), cert. denied, ---
U.S. ----, 108 S.Ct. 46 (1987);   McIntyre v. McIntyre,
771 F.2d 1316, 1317 (9th Cir.1985);        Fern v.
Turman, 736 F.2d 1367, 1370 (9th Cir.1984), cert.
denied, 469 U.S. 1210 (1985).      The strong state

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

857 F.2d 1478                                                                      Page 2
857 F.2d 1478, 1988 WL 96621 (C.A.9 (Cal.))
**(Cite as: 857 F.2d 1478)**

interest in domestic relations matters, the superior competence of state courts in settling family disputes, and the possibility of incompatible federal and state court decrees in cases of continuing judicial supervision by the state, make federal abstention appropriate in these cases. *Peterson v. Babbitt,* 708 F.2d 465, 466 (9th Cir.1983) (citing *Moore v. Sims,* 442 U.S. 415 (1979)).

**\*2** The district court did not abuse its discretion in ruling that the abstention doctrine was applicable in Reuter's section 1983 claim and removal action. Reuter is apparently seeking federal review of the proper custodial placement of his daughter. Such issues are best addressed in state court. *Peterson,* 708 F.2d at 466 (9th Cir.1983); *see also Csibi v. Fustos,* 670 F.2d 134, 136-37 (9th Cir.1982). Although Reuter raises constitutional challenges to the proceedings, these issues revolve around the care and custody of Reuter's child. Reuter is free to present his constitutional claims to the state court. *See Coats,* 819 F.2d at 237 ("[i]f the constitutional claims in the case have independent merit, the state courts are competent to hear them"); *Peterson,* 708 F.2d at 466 ("[w]hatever constitutional claims [the plaintiff] may propose he is at liberty to present to the ... state courts"). Accordingly, because the action involves the custody of his daughter, the district court did not abuse its discretion in applying the abstention doctrine and dismissing Reuter's section 1983 action and removal petition.[FN2]

CONCLUSION

The district court's dismissal is AFFIRMED.

FN* The panel unanimously finds this case suitable for disposition without oral argument. Fed.R.App.P. 34(a), Ninth Circuit Rule 34-4.

FN** This disposition is not appropriate for publication and may not be cited to or by the courts of this Circuit except as provided by Ninth Circuit Rule 36-3.

FN1. The district court apparently misplaced for seven days the order accompanying the judgment of dismissal which was not signed

until December 10, 1985, and which was not filed until December 11, 1986.

FN2. On September 15, 1987, Reuter filed with this court a "Motion for Court Order Designing Summons Recipient." The motion was referred to the screening panel by the motions unit. Reuter apparently requests this court to order service of a summons upon Jocelyn Cocco, who is Ann Reuter's Attorney. The motion also requests that Stanford University provide a list of names of its corporate officers. The motion is denied.
On February 22, 1988, Reuter also filed a "Motion to Add Additional Defendants and Joinder of Similar State Actions ..." The motion was referred to the screening panel by the Clerk of the Court. Reuter apparently requests this court to add as defendants the Clerk of Appeals of the Superior Court, Probate Court, Ann Reuter, and Jocelyn Cocco. Attached to the motion is a copy of a district court order dismissing Reuter's petition to proceed in forma pauperis and denying his request for a writ of mandamus ordering the state to pay for the transcripts of the state court hearing. This court has already granted Reuter's request to proceed in forma pauperis and denied his request to have the transcripts prepared at government expense. As to Reuter's motion to add additional defendants, although parties may be added by order of the court during the pendency of the action, Reuter may not add additional parties upon appeal. *See* Fed.R.Civ.P. 15. *Cf. Cook & Sons Equip., Inc. v. Killen,* 277 F.2d 607, 609 (9th Cir.1960) (no authority to amend a notice of appeal to bring in additional parties). Accordingly, the court denies the motion.
Finally, on May 12, 1988, Reuter submitted a "Note and Exhibit" which was referred to the screening panel. In the "Note and Exhibit," Reuter alleges that the exhibits prove he has exhausted his state remedies relating to "civil rights violations and state action in probate matter...." Attached to the "Note and Exhibit" is a copy of the California Supreme Court's order denying review of his appeal. This information is irrelevant to a determination of whether the domestic relations abstention doctrine applies and we do not consider it.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

857 F.2d 1478
857 F.2d 1478, 1988 WL 96621 (C.A.9 (Cal.))
**(Cite as: 857 F.2d 1478)**

C.A.9 (Cal.),1988.
Reuter v. State of Cal.
857 F.2d 1478, 1988 WL 96621 (C.A.9 (Cal.))

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.                                                    Page 1
Not Reported in F.Supp., 1990 WL 134485 (D.Colo.)
**(Cite as: Not Reported in F.Supp.)**


℃
Oyler v. City and County of Denver
D.Colo.,1990.
Only the Westlaw citation is currently available.
United States District Court, D. Colorado.
Charles G. OYLER, Plaintiff,
v.
CITY AND COUNTY OF DENVER, Ms. Marva
Hammons, Individually and in her capacity as
Director of Family and Children Services, City and
County of Denver, Department of Social Services,
Ms. Loretta Ray, Ms. Maria Valdes, Mr. John Doe 1,
Mr. John Doe 2, and Mr. John Doe 3, Defendants.
**Civ. A. No. 90-A-1255.**

Sept. 13, 1990.


Michael D. Nosler, Rothgerber, Appel, Powers &
Johnson, Denver, Colo., for plaintiff.
Niels Loechell, Assistant City Attorney, Human
Services, Claims Unit, Denver, Colo., for defendant.

MEMORANDUM OPINION AND ORDER
ARRAJ, District Judge.
*1 This matter is before the court on Plaintiff Charles
Oyler's ("plaintiff") motion to remand this case to
Denver District Court pursuant to 28 U.S.C. §
1447(c). Oral Argument was heard on September 6,
1990. After reviewing the briefs and arguments
submitted by counsel, the court finds and rules as
follows.


*Background*

The plaintiff commenced this action in District Court
in the County of Denver, the State of Colorado, Civil
Action No. 90 CV 5456. The plaintiff alleged
claims of slander, libel, breach of written and oral
contract, intentional interference with contract,
outrageous conduct, civil conspiracy, punitive
damages and two claims under 42 U.S.C. § 1983 ("§
1983").

On July 18, 1990 the defendants filed their notice of
removal pursuant, in part, to 28 U.S.C. § 1441(b) ("§
1441"). Defendants put forth in their notice of
removal that § 1441(b) authorizes the removal of the
case because a claim, specifically the § 1983 claims,
arose under the Constitution, treaties, or laws of the

United States. The defendants filed a motion to
dismiss and to stay discovery pending resolution of
the motion to dismiss on July 30, 1990. Plaintiff
filed a motion to remand on August 16, 1990. FN1


*Discussion*

I. *Concurrent Jurisdiction Alone Does Not Preclude
Removal*


State courts have concurrent jurisdiction with federal
courts over § 1983 actions. See *Claflin v.
Houseman*, 93 U.S. 130, 136 (1876). Therefore, the
plaintiff claims that his selection of a state forum
should not be disturbed, and the case should be
remanded. See *Young v. Board of Education of
Fremont County School District, RE-3*, 416 F.Supp.
1139, 1141 (D.Colo.1976). In the *Young* case the
court found that because there was concurrent
jurisdiction over § 1983 cases, there was "no
compelling reason to justify giving defendants ... the
right to select the forum for adjudication ...,"
especially when the defendants had not alleged that
they could not secure a proper defense in state court.
*Id.*

The plaintiff's reliance on the *Young* decision,
however, appears to be misplaced. The Tenth
Circuit has held where concurrent jurisdiction occurs
in the state and federal courts, removal is allowable
under § 1441 unless specifically prohibited by act of
Congress. *Beckman v. Graves*, 360 F.2d 148, 149
(10th Cir.1966). The court addressed the question of
whether or not the plaintiff's choice of forum should
be controlling and stated;

Although the statute gives the farmer (appellant) a
choice of forum, it does not guarantee that his choice
shall remain undisturbed. And since the Agricultural
Adjustment Act does not expressly prohibit removal
as it could have done ..., this court will not do it by
implication or by ignoring the meaning of section
1441. [Citation omitted].

*Id.*

Other federal courts have found that concurrent
jurisdiction alone does not necessitate remand. The
Sixth Circuit noted that § 1983 actions were not

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

included in the list of nonremovable actions in 28 U.S.C. § 1445, and no other statute provides, expressly or otherwise, that § 1983 actions are nonremovable. *Dorsey v. City of Detroit,* 858 F.2d 338, 341 (6th Cir.1988). Therefore, the court held that it would be contrary to the plain language of § 1441 to hold that concurrent jurisdiction implies that removal is prohibited. *Id. See also Denette v. Life of Indiana Insurance Co.,* 693 F.Supp. 959, 967 (D.Colo.1988) (existence of concurrent jurisdiction does not require remand); *Aben v. Dallwig,* 665 F.Supp. 523, 525 (E.D.Mich.1987) (majority of courts have concluded that the existence of concurrent jurisdiction alone does not defeat the right to removal). Therefore, this court finds that removal was not improvident solely because concurrent jurisdiction exists over the § 1983 claims.

### II. *The Denver Department of Social Services Is Immune from Suit Under the Eleventh Amendment*

**\*2** In the defendants' motion to dismiss, defendants argue that the Denver Department of Social Services is immune to suit in federal court under the Eleventh Amendment. The plaintiff asserts that the Eleventh Amendment defense deprives this court of jurisdiction, and the case should be remanded. This court, therefore, must initially decide if the Eleventh Amendment is applicable in this case.

The Eleventh Amendment provides:

The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. Const. amend. XI.[FN2]

When the Eleventh Amendment applies, it acts as a "... specific constitutional bar against hearing even *federal* claims that otherwise would be within the jurisdiction of the federal courts." *Pennhurst State School and Hospital v. Halderman,* 465 U.S. 89, 120 (1984) (emphasis original).

The defendants contend that the Denver Department of Social Services ("DDSS") is an arm of the State of Colorado, and thus entitled to Eleventh Amendment immunity. Whether an entity is an arm of the state is determined in part, "upon the nature of the entity created by state law." *Mt. Healthy City School District Board v. Doyle,* 429 U.S. 274, 280 (1977).

*See also Unified School Dist. No. 480 v. Epperson,* 583 F.2d 1118, 1121 (10th Cir.1978); *Harris v. Tooele County School District,* 471 F.2d 218, 220 (10th Cir.1973) (Holloway, J., dissenting). Another factor in determining if the Eleventh Amendment applies is the manner in which the entity is financed. *Harris v. Tooele County School Dist.,* 471 F.2d at 220.

Under Colorado statutory law, the county departments of social services are designated as "agents" of the State Department of Human Resources "charged with the administration of public assistance and welfare and related activities in the respective counties in accordance with the rules and regulations of the State Department." C.R.S. § 26-1-118(1). The State of Colorado has the power to "take any action which may be necessary or desirable for carrying out the provisions of the Social Services Code." C.R.S. § 26-1-109(4)(e). Furthermore, C.R.S. § 26-1-109(4)(c) and (b) provide that the State Department of Social Services can "undertake forthwith the administration of any and all public assistance and food stamps activities within any county ..." and the state has the power to terminate grants in aid to any county it finds is not in compliance with the state standards and regulations.

In Colorado, the county departments of social services receive eighty percent of their funds from the state, and the state reviews the county adherence to state requirements to see if the county department will be provided with funds. C.R.S. § 26-1-122(3)(b) provides in part:

If the county departments are administered in accordance with the policies and rules of the state department for the administration of county departments, eighty percent of the costs of administering ... social services shall be advanced to the county by the state treasurer from funds appropriated or made available for such purpose, upon authorization from the state department ...

The funding for the DDSS is established pursuant to and must be administered pursuant to state rules and regulations. C.R.S. § 26-1-123(1) and 3(a).

**\*3** The breadth of power that the state has over the county departments of social services, and the funding such departments receive from the state indicates that the DDSS is an arm of the state. Additionally, there is a long line of precedent in Colorado case law holding that the county departments of social services are mere agencies and

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                 Page 3
Not Reported in F.Supp., 1990 WL 134485 (D.Colo.)
(Cite as: Not Reported in F.Supp.)

divisions of the State Department of Social Services. *Board of County Commissioners of the County of Otero v. State Board of Social Services,* 186 Colo. 435, 528 P.2d 244, 247-248 (1974); *Cobbin by Cobbin v. City and County of Denver,* 735 P.2d 214 (Colo.App.1987) (the social services programs are a matter of exclusive statewide concern; the state's power prevails over those reserved to the City and County of Denver), (citing *Dempsey v. City and County of Denver,* 649 P.2d 726 (Colo.App.1982)); *Nadeau v. Merit System Council for the County Departments of Social services,* 26 Colo.App. 362, 545 P.2d 1061 (1975). Specifically, it has been held that the Denver Department of Social Services, despite its name, is an agency of the State of Colorado. *Reinoehl v. Fogle et al.,* Case No. 87 CV 26252 (District Court of Denver June 7, 1990). Thus, this court determines that the Eleventh Amendment is applicable in this matter.

Even though this court finds that DDSS is an arm of the state, and is therefore subject to Eleventh Amendment immunity, Marva Hammons, not DDSS, has been named in this suit in her individual and official capacity as Director of Family and Children Services, City and County of Denver, Department of Social Services. A question arises when a suit is brought against state officials whether that suit is a suit against the state itself. *Pennhurst State School and Hospital v. Halderman,* 465 U.S. at 101.

The Supreme Court in *Ex Parte Young,* 209 U.S. 123 (1908) held that a suit challenging the constitutionality of a state official's action, such as a § 1983 action, is not one against the state. This principle was clarified in *Edelman v. Jordan,* 415 U.S. 651, 666-669 (1974), when the Court held that when a plaintiff sues a state official alleging a violation of federal law, the federal court may award an injunction that governs the official's future conduct, but not one that awards retroactive monetary relief.

In the instant case, the plaintiff has requested that judgment against DDSS be entered consisting of mandatory injunctions, reinstatement of the plaintiff with backpay, attorney's fees and costs, and damages for breach of contract. Since, several of the requests are for retroactive relief, such requests fall "afoul with the Eleventh Amendment," and this court has no jurisdiction over such requests. *See Pennhurst State School and Hospital v. Halderman,* 465 U.S. at 105-106. Furthermore, when a plaintiff alleges that a state official has violated state law, as is the case here, "the entire basis for the doctrine of *Young* and

*Edelman* disappears," and the federal court may not instruct state officials on how to conform to their state law. *Id.* at 106.[FN3]

It has been held that remand is proper when an Eleventh Amendment defense has been raised because the Eleventh Amendment bars federal jurisdiction, and therefore removal is improvident under 28 U.S.C. § 1447(c). *See Keenan v. Washington Metropolitan Area Transit Authority,* 643 F.Supp. 324, 334 (D.D.C.1986); *Mazur v. Hymas,* 678 F.Supp. 1473 (D.Idaho 1988); *David Nursing Homes v. Michigan Dept. of Social Services,* 579 F.Supp. 285 (E.D.Mich.1984).

The facts in the *Keenan* case are very similar to the case at hand. The defendant removed the action from state court, and then raised the Eleventh Amendment defense in a motion to dismiss. The *Keenan* court held that the Eleventh Amendment was a jurisdictional bar preventing the federal court from hearing the matter. *Keenan v. Washington Metropolitan Area Transit Authority,* 643 F.Supp. at 334. The court remanded the entire case pursuant to 28 U.S.C. § 1447(c). *Id.*

The defendants have not waived their Eleventh Amendment argument by removing this case to federal court. The inference of waiver is precluded absent clear and unequivocal consent. *Colorado Health Care Association v. Colorado Department of Social Services,* 598 F.Supp. 1400, 1406 (D.Colo.1984), *aff'd* 842 F.2d 1158 (10th Cir.1988). In the latter case, the court found that there was waiver because the defendants who were represented by the Attorney General's office had 1) removed the case; 2) waiver was found in the express stipulation that the parties entered into and; 3) the defendants had impliedly waived the defense by their refusal to assert it in face of the plaintiffs' explicit argument that it had been waived. *Id.* In this case, the only factor that implies waiver is the fact that the defendants removed the case, and therefore waiver is not clear and unequivocal. *See, Estate of Ritter v. University of Michigan,* 851 F.2d 846, 852 (6th Cir.1988) (it would be anomalous to hold that Eleventh Amendment immunity may be raised for the first time on appeal, yet waived by removing the case to federal court).

*4 Additionally, waiver would only be possible if the counsel for the defendants had the authority of the state to waive immunity. *See Keenan v. Washington Metropolitan Area Transit Authority,* 643 F.Supp. at 332-333 (declaration of the state's intention to

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1990 WL 134485 (D.Colo.)
**(Cite as: Not Reported in F.Supp.)**

Page 4

consent to suit must be clear).    The court in *Colorado Health Care* did not specifically address this issue, but in another case where the removing party was also represented by the Attorney General's Office, it was assumed that the attorney had the right to waive immunity on behalf of the state.    *See i.e., Gallagher v. Continental Insurance Company,* 502 F.2d 827, 831 (10th Cir.1974) (where state made a general appearance, removed case, moved to dismiss, and resisted remand, the state waived its immunity because the Attorney General's authority is not questioned).    In the case at bar, the defendants are represented by the Denver City Attorney's Office and it does not appear that a City Attorney would be conferred with the same power as the Attorney General to waive immunity for the state.

III. *Equitable Considerations Favor Remand*

Ordinarily, a district court may not remand a properly removed case for discretionary reasons not authorized by the controlling statutes. *Thermtron Products v. Hermansdorfer,* 423 U.S. 336, 345 n. 9 (1976).    The Supreme Court, however, has stated that:

... a district court has discretion to remand to state court a removed case involving pendent claims upon a proper determination that retaining jurisdiction over the case would be inappropriate.    The discretion to remand enables district courts to deal with cases involving pendent claims in the manner that best serves the principles of economy, convenience, fairness, and comity which underlie the pendent jurisdiction doctrine.    Such discretion is precluded neither by the removal statute or by our decision in *Thermtron.*

*Carnegie-Mellon University v. Cohill,* --- U.S. ----, 108 S.Ct. 614, 622, 98 L.Ed.2d 720 (1988) (White, J. dissenting).

In *Carnegie-Mellon,* the single federal law claim was eliminated voluntarily by the plaintiff at an early stage of litigation, leaving only the pendent state law claims in federal court.    The Court expressed that a "federal court's determination of state-law claims could conflict with the principle of comity to the States and with the promotion of justice between the litigating parties." *Id.* at 618 (citing, *United Mine Workers v. Gibbs,* 383 U.S. 715, 726 (1966))    In discussing the doctrine of pendent jurisdiction, the Supreme Court in *Gibbs* stated that when "state issues substantially predominate, whether in terms of

proof, of the scope of the issues raised, or of the comprehensiveness of the remedy sought, the state claims may be dismissed without prejudice and left for resolution with the state tribunals." *Id.* at 726-727.[FN4]

Despite the fact that in this case the federal law claims have not been disposed of, the holding of *Carnegie-Mellon* still applies.    There are several factors that warrant the use of this court's discretion to remand:  1) several of the plaintiff's claims are subject to the Eleventh Amendment, and therefore this court does not have jurisdiction over them because removal was improvident under 28 U.S.C. § 1447; 2) eight of the plaintiff's ten claims arise under state law, and while they may not be unsettled areas of law, the state claims still predominate in issues of proof; 3) there is a substantial chance of confusion at trial;  and 3) there is concurrent jurisdiction over the § 1983 claims, which are the only federal law claims.

*5 In a similar case to the one at hand, the defendant removed the action from state court on the basis of a § 1983 claim.    The court granted the plaintiff's motion to remand, refusing to extend its power of pendent jurisdiction to the state claims where it appeared the state issues predominated. *Harrison v. Texas Dept. of Corrections,* 694 F.Supp. 226, 228-229 (E.D.Tex.1988).    The *Harrison* court reasoned that while the court had jurisdiction over the state law claims, the complaint filed in state court consisted mainly of claims in tort under unsettled state law, and therefore on the strength of *Gibbs* and *Carnegie-Mellon,* the case was remanded. *Id. See also Garcia v. Jefferson County, Colorado,* 687 F.Supp. 1498, 1500-1501 (D.Colo1988) (the state law claim raised in the context of the § 1983 suit will lead to jury confusion and unnecessarily expand the scope of trial);    *White v. Talboys,* 635 F.Supp. 505, 508 (D.Colo.1986) (court declined to exercise pendent jurisdiction over outrageous conduct claim because the state claim tends to expand the scope of coverage and remedy provided under § 1983).

Rather than divide this case between the state and federal courts, or dismiss several of the claims, in the spirit of judicial economy and comity this court finds that retaining jurisdiction over this matter would be inappropriate and remands the entire action to state court.

Accordingly, it is

ORDERED that the Plaintiff's motion for Remand be,

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1990 WL 134485 (D.Colo.)
(Cite as: Not Reported in F.Supp.)

Page 5

and the same hereby is, GRANTED;

FN1. Defendants filed a brief in opposition to plaintiff's motion to remand. Plaintiff moved to have the brief stricken, but this court denied that motion on September 6, 1990.

FN2. It is has been held that under the Eleventh Amendment a state is immune from suits brought against it in federal court by its own citizens or citizens of another state. *See Employees v. Missouri Public Health Department,* 411 U.S. 279, 280 (1973).

FN3. The plaintiff in his amended complaint, specifically claims damages for defamation, outrageous conduct, interference with contract, and conspiracy against those defendants *not* sued in their official capacity. The plaintiff's request for back pay and damages as a result of breach of written and oral contract, however, is the type of relief that is barred as being against the state because it is arises under state law, against a state official in her official capacity, and does not allege willful misconduct. The Eleventh Amendment immunity does not depend on who is named in the caption of the case, but rather whether a suit is one where judgment would be satisfied from state funds. *Mazur v. Humas,* at 1475-1476.
Additionally, while the plaintiff's state claims are pendent to its § 1983 claims in federal court, the Eleventh Amendment "should not be construed to apply with less force to this implied form of jurisdiction than it does to the explicitly granted power to hear federal claims." *Pennhurst State School and Hospital v. Halderman,* at 120.

FN4. The Court in *Gibbs* stated that federal jurisdiction occurs over an entire case, including state claims, whenever the federal law and state law claims have a "common nucleus of operative fact" and are "such that [a plaintiff] would ordinarily be expected to try them all in one judicial proceeding." *Id.* at 725. The Court drew a distinction between the power to hear state law claims and the discretionary exercise of that power stating, "[n]eedless decisions of state law

should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of the applicable law." *Id.* at 726.
D.Colo.,1990.
Oyler v. City and County of Denver
Not Reported in F.Supp., 1990 WL 134485 (D.Colo.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.